148 N.J. Super. 68 (1977)
371 A.2d 833
JAMES FRITZ, AN INFANT BY HIS GUARDIAN AD LITEM, JOAN FRITZ, AND JOHN FRITZ AND JOAN FRITZ, INDIVIDUALLY, PLAINTIFFS,
v.
MICHAEL ANDERSON AND ANNA ANDERSON, MASTAPETER BUILDERS, INC., STEVE'S EXCAVATING, A COMPANY DOING BUSINESS IN THE STATE OF NEW JERSEY, RAND DEVELOPMENT CORP. AND RAYMOND MASTAPETER, SR., INDIVIDUALLY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 9, 1977.
*69 Mr. Michael J. Maggiano, argued the motion for plaintiffs (Gigante & Aslanian, attorneys).
Mr. Michael J. Stone, argued the motion for defendant Steve's Excavating (Hoagland, Longo, Oropollo & Moran, attorneys).
Mr. Edward V. Ryan, Attorney for defendants Michael Anderson and Anna Anderson.
Mr. Seymour S. Lichtenstein, Attorney for defendant Mastapeter Builders, Inc.
DREIER, J.C.C., Temporarily Assigned.
Plaintiffs John Fritz and Joan Fritz instituted this action, individually and on behalf of their infant son James Fritz, for injuries sustained by the infant plaintiff while on premises owned by defendants Anderson. The Andersons contracted with the other defendants to construct a building upon their property, which abutted a portion of plaintiff's backyard. The infant plaintiff was injured when he fell into an excavation.
*70 Defendant Steve's Excavating Co. by leave of court, filed a counterclaim against the adult plaintiffs for common law indemnification and contribution under the Joint Tortfeasors Act, N.J.S.A. 2A:53A-1. The claims are based upon the alleged failure of the adult plaintiffs "properly [to] supervise, control and instruct" the infant plaintiff at the time of the accident.
Plaintiffs have moved to dismiss the counterclaim on the ground that it is barred by the doctrine of parent-child immunity. The motion, made pursuant to R. 4:6-2(e), implicates matters outside the pleadings, and thus will be treated by the court as one for summary judgment under R. 4:46. For the reasons set forth below, the counterclaim against plaintiffs is dismissed.
The viability of defendant's counterclaim depends on the ability of the court to extend the abrogation of the parent-child immunity doctrine, beyond the limits established by the Supreme Court in France v. A.P.A. Transport, 56 N.J. 500 (1970). This follows because the claims for contribution under N.J.S.A. 2A:53A-1 and for indemnification are derivative in nature, dependent for their viability on the recognition of a potential claim by the infant plaintiff himself against his parents. See Pressler, New Jersey Court Rules, Comment to R. 4:6. As noted in the dissenting opinion of Justice Francis in France (see 56 N.J. at 507), under Kennedy v. Camp, 10 N.J. 390 (1954), "the Joint Tortfeasors Contribution Law provides no remedy unless there are tortfeasors who have a joint or common liability." Thus if the parents are immune from suit, they are a fortiori removed "from the category of a possible tortfeasor."
In France, supra, a death action was brought by a husband-father on behalf of the estate of his deceased wife, and a survival action was brought by him on behalf of his minor children, both against defendant motorist. The motorist counterclaimed for contribution against the husband-father inasmuch as it was the husband-father who negligently drove the vehicle at the time of the accident. Based upon an *71 analysis of the philosophies behind the immunity doctrine and the current trends of the law discarding the immunity, the court in France held that the doctrine should be abrogated in this State. The counterclaim was therefore allowed.
In reaching its conclusion the court traced the origins of the doctrine, as well as the philosophy behind the immunity, since its adoption in Reingold v. Reingold, 115 N.J.L. 532 (E. & A. 1935). There a 19-year-old unemancipated child was barred from recovering damages for injuries suffered while a passenger in a vehicle negligently operated by her father. The philosophy adopted in Reingold was that the application of the bar prevented the disruption of parental care, discipline and control. Cases from other jurisdictions had cited as their rationale the dangers of fraud and collusion, and these justifications were approved in later New Jersey cases. See Hastings v. Hastings, 33 N.J. 247 (1960); Heyman v. Gordon, 40 N.J. 52 (1963); Franco v. Davis, 51 N.J. 237 (1968).
France was decided on the same day as the interspousal immunity case of Immer v. Risko, 52 N.J. 482 (1970). The France court, after examining the authorities, decided that the Immer philosophy was applicable to parent-child immunity. Additionally, the court considered that the application of immunity was, being variably and inconsistently applied (unemancipated minors could always sue their parents on theories of contract or property), it had been subjected to serious criticism, and an examination of progressive jurisdictions indicated that its application was on the wane.
However, since negligence which may be asserted in other cases could differ from the type of negligence discussed by the Court in France, the court placed the following limitations upon its holding:
Our decision today goes no further than allowing suits between unemancipated children and their parents for injuries suffered as a result of the negligent operation of a motor vehicle.... We realize that there may be areas involving the exercise of parental authority and care over a child which should not be justiciable in a court of law. [56 N.J. at 507; emphasis supplied]. *72 In connection with the above statements the court cited Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (1963); and Silesky v. Kelman, 281 Minn. 431, 161 N.W.2d 631 (1968).
In Goller the Wisconsin Supreme Court abrogated the parent-child immunity doctrine. Goller, however, established the following exceptional situations wherein the doctrine could still be asserted as a defense:
(1) where the alleged negligent act involves an exercise of parental authority over the child; and
(2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care. [122 N.W.2d at 198]
In Silesky, supra, the Minnesota Supreme Court expressly approved these limitations. But cf. Cole v. Sears Roebuck & Co., 47 Wis.2d 629, 177 N.W.2d 866 (1970) and Thoreson v. Milwaukee & Suburban Transport Co., 56 Wis.2d 231, 201 N.W. 2d 745 (1972), limiting the immunity as delineated by Goller.
The New Jersey Supreme Court had further occasion to treat the immunity doctrine in the case of Small v. Rockfeld, 66 N.J. 231 (1974), where it held the doctrine inapplicable to a wrongful death action brought by a grandmother against the spouse of the plaintiff's deceased daughter on behalf of the couple's minor son. It was alleged therein that defendant husband either murdered or caused the death of the daughter through reckless conduct.
In addition to discussing Goller v. White, supra, the court in Small (66 N.J. at 243) also cited Gibson v. Gibson, 3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 (1971), where the California Supreme Court upheld the viability of a negligence action by a minor child against its parent. While the California court rejected the specific guidelines offered by the Wisconsin Supreme Court in Goller, supra, opting instead for a broader standard, it nevertheless held that parents would still not be liable for conduct which *73 amounted to no more than what "an ordinarily reasonable and prudent parent [would] have done in similar circumstances." 92 Cal. Rptr. at 293, 479 P.2d at 653 (emphasis in original).
Although the effect of the holding in Small was to extend the holding of France beyond cases of ordinary auto negligence, more germane to the instant case is the court's discussion of situations in which the doctrine was not abrogated:
The reasoning and tenor of Justice Proctor's opinion in France, as in Immer, leave no room for doubt that he and those who joined him considered the parental immunity to have been terminated in situations, such as the one at hand, where exercise of parental authority and adequacy of child care are admittedly not matters in issue. [66 N.J. at 244; emphasis supplied]
The most recent treatment of the doctrine is by the Appellate Division in Dower v. Goldstein, 143 N.J. Super. 418 (1976), wherein it was held that parents could not raise the immunity as a defense to a suit brought by their infant son based upon N.J.S.A. 4:19-16, imposing strict liability on dog owners. The court there rested its conclusion upon the legislative intent of the above-quoted statute, to provide that "[dog] owners should as the social price of keeping them [dogs] compensate those innocently sustaining injury in that fashion" (quoting from Tanga v. Tanga, 94 N.J. Super. 5, 14 (App. Div. 1967)). 142 N.J. Super. at 422.
The negligence attributed to plaintiffs in the counterclaim consists of a failure to supervise and exercise proper control over the infant plaintiff, in permitting him to venture unchaperoned into the neighborhood, and specifically, into an area where plaintiffs knew that construction and excavation were in progress. In view of what has been stated above, this court is constrained to classify these allegations as falling clearly within the realm of the exercise of parental authority and discretion, and hence, held by our Supreme Court, "not be justiciable in a court of law." 56 N.J. at 507.
Accordingly, under the above-cited authorities, the situation presented here is subject to limited circumstances in *74 which the immunity doctrine may properly be asserted by plaintiffs. The counterclaim filed by defendant Steve's Excavating Co. fails to state a claim upon which relief can be granted. R. 4:6-2(e). Partial summary judgment for plaintiffs is granted under R. 4:46.