182 N.J. Super. 90 (1981)
440 A.2d 58
JENNIFER FOLDI, AN INFANT BY HER GUARDIAN AD LITEM, DANIEL R. COBURN, PLAINTIFF-APPELLANT,
v.
DORSIE G. JEFFRIES AND FLORENCE JEFFRIES AND MICHAEL FOLDI AND BERNADINE FOLDI, DEFENDANTS-RESPONDENTS AND DORSIE G. JEFFRIES AND FLORENCE JEFFRIES, THIRD-PARTY PLAINTIFFS,
v.
MICHAEL FOLDI AND BERNADINE FOLDI, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1981.
Decided December 24, 1981.
*91 Before Judges BOTTER, ANTELL and FURMAN.
*92 R. Jerome Jabbour argued the cause for appellant (Lucid, Jabbour, Pinto & Rodgers, attorneys; R. Jerome Jabbour on the brief).
Donald S. McCord, Jr. argued the cause for respondents (O'Donnell, McCord & Leslie, attorneys; Donald S. McCord, Jr. on the brief).
The opinion of the court was delivered by ANTELL, J.A.D.
In this personal injury action infant-plaintiff appeals from an order for summary judgment entered in favor of her parents, defendants Michael and Bernadine Foldi. Plaintiff was 2 1/2 years old at the time of the accident. Her theory of recovery is grounded in defendants' claimed failure to exercise reasonable care in supervising her behavior and to instruct her in personal care and safety. The order below rests on the doctrine of parental immunity.
While defendant Bernadine Foldi was working in her garden plaintiff wandered off to neighbors' property where she was bitten by their dog. Although the mother had been keeping her eye on plaintiff the injury was sustained during a five or ten minute interval when the child slipped away and her absence went unnoticed. When she was later found by defendant she was crying and bleeding on another neighbor's driveway. This action was initiated against the owners of the dog, defendants Jeffries, who denied liability and filed a third-party complaint against Michael and Bernadine Foldi for indemnification. Plaintiff then amended her complaint to join her parents as defendants. We are advised that plaintiff's claim against defendants Jeffries has been settled.
Although the Supreme Court recognized in France v. A.P.A. Transport Corp., 56 N.J. 500 (1970), that the parent-child immunity doctrine "should be abrogated in this State," it acknowledged "that there may be areas involving the exercise of parental authority and care over a child which should not be justiciable *93 in a court of law." Noting that its decision went no further than to allow suits between unemancipated children and their parents for injuries suffered as the result of the negligent operation of a motor vehicle, the court left it to future cases to decide "what limits, if any, the rule enunciated here should have." 56 N.J. at 507.
Small v. Rockfeld, 66 N.J. 231 (1974), removed all doubt that the rule abrogating immunity was not limited to motor vehicle negligence and applied it in that case to allow an action against the infant-plaintiff's father for feloniously causing the death of his wife, the infant's mother. However, the court again observed that immunity could still be operative in "special areas in the parent-child relationship, such as customary care and discipline," and specifically commented that immunity had been terminated only in cases not involving the exercise of "parental authority and adequacy of child care." 66 N.J. at 244. It also noted with apparent approval the following exceptional situations identified in Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (Sup.Ct. 1963), in which immunity might still prevail:
(1) Where the alleged negligent act involves an exercise of parental authority over the child; and (2) Where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care. [66 N.J. at 243, emphasis ours].
The residual limits of the immunity doctrine have since been considered in four other New Jersey cases. In Dower v. Goldstein, 143 N.J. Super. 418 (App.Div. 1976), the doctrine was held not applicable to bar a suit by an infant-plaintiff against his parents for injuries caused by the parents' dog. In Gross v. Sears, Roebuck & Co., 158 N.J. Super. 442 (App.Div. 1978), a suit was allowed against defendant-father for negligently injuring the infant-plaintiff in the operation of a lawnmower.
Fritz v. Anderson, 148 N.J. Super. 68 (Law Div. 1977), and Convery v. Maczka, 163 N.J. Super. 411 (Law Div. 1978), addressed circumstances materially analogous to those here presented. In Fritz the infant-plaintiff sued for injuries caused by a fall into an excavation on a neighbor's property. The *94 action was grounded in alleged failure by defendant parents to supervise and instruct as to principles of safety. These breaches of care were held to involve the exercise of parental authority and discretion, and therefore, under the doctrine of parent-child immunity, not redressable. Arriving at a different result, the Convery court held that immunity was not applicable for failure to supervise where the child fractured a bone by jumping from a chair. It was there reasoned by our dissenting colleague that the injury was "actionable within the limits of reasonable foreseeability against others with a special relationship to the child." 163 N.J. Super. at 416. Although he held that the right of recovery did not "arise exclusively out of the parent-child relationship," the only relationship, "special" or otherwise, we discern between the injured plaintiff and defendant from which a duty of care might have arisen was that of parent and child. Since such a duty cannot be isolated from the concept of parental care and authority and its attendant immunity, we are unable to agree with the rationale of that decision.
It is evident in the foregoing cases, except for Convery, that the determinant was not whether the harm could have been avoided by the exercise of parental care, but whether the parents' conduct was the causative agency of harm or created the foreseeable risk thereof and was negligent without reference to any duty of parental care. That this was the controlling factor in Gross was stated by that court in the following words:
The essence of the alleged negligence herein arises out of the affirmative act of the parent in mowing the lawn. Whether or not this act was accompanied by a warning to his child to "go away," the cause of action does not constitute one arising out of the exercise of "parental authority" so as to warrant the application of the immunity doctrine. [158 N.J. Super. at 447-448]
It is not here suggested that defendants contributed in any affirmative way to the happening of this accident.
Every person is answerable for the consequences of his actions or failures to act which are the proximate cause of reasonably foreseeable harm to others. Immunity therefor may be judicially conferred only "on the basis of policy or, perhaps *95 more accurately, on the weighing of competing policies." Hastings v. Hastings, 33 N.J. 247, 250 (1960), overruled on other grounds, 56 N.J. 500, 507 (1970).
In this State parent-child immunity originally rested on the judicial policy of preserving family harmony. More recent cases emphasized that it was needed to foreclose possibilities for fraud and collusion. However, both of these bases now stand categorically rejected. France v. A.P.A. Transport Corp., supra, 56 N.J. at 504-505; Merenoff v. Merenoff, 76 N.J. 535, 550-554 (1978). Although our Supreme Court has distinctly stated that limited immunity survives within the parent-child relationship, we are aware of no authoritative statements identifying the purpose or policy to be served by the immunity in its present form. Because we conceive that such a statement may be necessary to a better understanding of the doctrine and its application to future cases, we will comment briefly on what we regard as its underlying considerations of sound public policy.
Singling out and assessing the factors which enter into the formulation of policy germane to parent-child immunity was rightly described by Justice Clifford in his dissenting opinion in Small v. Rockfeld, 66 N.J. at 251 as "a most difficult undertaking." Foremost, perhaps, among the vexing considerations to be weighed is the very premise of the immunity doctrine itself  that harm has been wrongfully inflicted by one upon another and that it is the purpose of the doctrine to provide the wrongdoer sanctuary from its consequences. This dilemma has been dealt with elsewhere. In its legislative declaration to the New Jersey Tort Claims Act, N.J.S.A. 59:1-2, the New Jersey Legislature acknowledged the "inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity." Nevertheless, weighing this against the fact that "the area within which government has the power to act for the public good is almost without limit," it concluded that "government should not have the duty to do everything that might be done," and declared that public entities should be liable for their negligence only within the limitations *96 of that enactment and the principles therein established. Also see Fitzgerald v. Palmer, 47 N.J. 106, 109-110 (1966).
The anxieties addressed by the New Jersey Tort Claims Act are not so unlike those which confront us here that the decision to confer immunity for injuries caused by the exercise or nonexercise of discretionary governmental powers is irrelevant to the context of parent and child. "In making new law, courts should always consider the impact of relevant legislative enactments." McDonald v. Mianecki, 79 N.J. 275, 286, n. 3 (1979).
As with government, the area within which parents may act for the benefit of their children and to protect their safety is almost without limit. To allow a remedy for fault in the order of supervisional and educational priorities chosen by a child's parents and in how the parents weighed competing demands upon their time, attention and resources implies their uninterrupted duty to foresee everything, be everywhere, and do everything at once to guard their children from the ubiquitous threat of harm. Their liability in negligence cannot rest on the same basis as that of the baby sitter who accepts defined responsibilities for a fixed period of time. Like the "private entrepreneur" alluded to in Fitzgerald v. Palmer, supra, 47 N.J. at 109, the latter "may readily be held for negligent omissions within the chosen ambit of his activity." But, as we have said, the area within which parents may act for the safety and welfare of their children is almost unlimited. Parents, like government, "should not have the duty to do everything that might be done." N.J.S.A. 59:1-2. Rather, the determination of "what ought to be done," Fitzgerald, 47 N.J. at 109, should be left to the exercise of their discretion.
We also see as justification for limited immunity the fact that discretionary judgments involving the adequacy of child care and supervision can rarely be separated from the parents' philosophical dispositions as to how the physical, moral, emotional and intellectual growth of their children can best be promoted. In this area, except where circumstances are so extreme as to *97 demonstrate intentional harm, there are no guides to navigation. What appears to be indifference and neglect to one parent may be seen by another as fostering the child's strength and self-reliance. What is vigilance and concern to one is only rigidity and insecurity to another. Education, cultural considerations, experience and ordinary intelligence, to name only a few, are all factors which are never proportioned in quite the same way from one family to the next. Yet all are operative in the exercise of parental authority and lend a highly relative character to the validity of these discretionary decisions.
The lack of criteria gathers added significance from the fact that the judgments of a parent are often guided by expectations and insights into the child's limitations and capabilities which are sensed from intimate association and which simply cannot be articulated. Each child is unique and in important respects his behavioral traits and learning mechanisms are usually best understood by his parents who must often make decisions concerning the child under great constraints of time and attention. These highly subjective influences can neither be effectively transmitted to, nor dependably dealt with, by a fact finder in determining whether a parent has exercised reasonable care to protect his child against the numerous hurts which are common to childhood. To allow a determination of negligence vel non on the expectation that these elusive, though nevertheless meaningful factors, can be properly perceived and evaluated is not so defensible in any realistic sense as to justify encumbering the exercise of parental discretion with the threat of litigation for the mistaken exercise thereof.
While the policy considerations mentioned would not justify the broad immunity that pre-existed France v. A.P.A. Transport Corp., supra, they are valid reasons for immunity to claims arising from mismanagement of the parent-child relationship itself.
We conclude that the failure to supervise the activities of the infant-plaintiff in the circumstances here presented and to *98 provide care and instruction relating to safety and self-preservation so integrally involved "the exercise of parental authority and care over a child," id., 56 N.J. at 507, as to be a form of nurture equatable with "food, clothing, housing, medical and dental services.... ." In our view, supervision and instruction on safety are among those incidents of parental care contemplated by the final phrase, "and other care," of the foregoing quotation cited in Small v. Rockfeld, 66 N.J. at 243, and remain protected by the doctrine of parent-child immunity.
Affirmed.
FURMAN, J.A.D. (dissenting).
I would reverse and remand for trial for the reasons set forth in Convery v. Maczka, 163 N.J. Super. 411 (Law Div. 1978).