274 N.J. Super. 257 (1992)
643 A.2d 1053
JOSEPHINE DEMARCO, PLAINTIFF,
v.
MARY DEMARCO, DEFENDANT.
Superior Court of New Jersey, Law Division Special Civil Part, Atlantic County.
Decided November 10, 1992.
*259 Michael Glassman, for plaintiff (Epler & Glassman, attorneys).
William E. Nugent, for defendant (Nugent, Fitzgerald McGroarty & McFadden, attorneys).
WINKELSTEIN, J.S.C.
This case presents issues under the doctrine of parental immunity in a factual context not previously addressed in any prior court decision in this jurisdiction.
A motion for summary judgment was filed by defendant Mary DeMarco, the mother of plaintiff, Josephine DeMarco ("plaintiff" or "Josephine"). No genuine issues of material fact are in dispute and the matter is appropriate for summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 110 A.2d 24 (1954).
The parties resided at 309 A Westcoat Avenue in Nesco, New Jersey. Their home had been damaged by fire and on June 16, 1989, the defendant and her seventeen year old daughter were at the home painting. At approximately 6:00 p.m. plaintiff went to the movies with her boy friend. She returned about midnight and asked her mother if her boy friend could spend the night. Her mother told her that he could not. After her boy friend left, plaintiff began an argument with defendant. Mother and daughter subsequently left their home to return to the house in Hammonton where they were temporarily staying. Defendant drove *260 and plaintiff was seated in the front passenger seat. The car doors were not locked and neither party wore a seat belt.
During the drive plaintiff became both verbally and physically abusive toward her mother. She said she wanted to live her life "the way she wanted to." She resented her mother's interference. During the ride, her mother asked if she had taken any drugs and she responded, in a sarcastic fashion, "Yeah, sure, mom." At that point she began striking her mother in the chest.
Approximately 9 months earlier plaintiff had been hospitalized at the Kessler Memorial Hospital in Hammonton, New Jersey, with a diagnoses of "drug overdose; major depression with suicide attempt." She had been taken to the emergency room after ingesting sleeping pills. During her hospitalization it was determined that a problem had arisen between her and her father with respect to the break-up of her parents' marriage. Plaintiff was discharged three days after admission with no medication, as it was concluded that she no longer exhibited any suicidal ideation.
After hearing Josephine's response concerning drugs, defendant became concerned with her daughter's conduct and decided to drive to the crisis intervention center at the Atlantic City Medical Center, Mainland Division, where a psychiatric intervention unit was available. Defendant is a registered nurse with some limited training in the evaluation of a patient's mental status.
Defendant testified that when she decided to go to the crisis intervention unit, she did so because her daughter had never previously displayed similar aggressive behavior toward her parents. She had never been either verbally or physically abusive toward her mother as she was on the night of the incident. Defendant considered her daughter to be "out of control."
While traveling towards the medical center, defendant was forced to stop the car after plaintiff threatened to get out and walk. When she stopped, Josephine got out and started walking in the direction from which they came. Her mother then backed up and told Josephine to get in. She did so, and defendant again *261 began to drive. Plaintiff resumed her physical and verbal attacks against her mother; and several minutes later again threatened to jump out of the car. Defendant slowed the car to 40 miles per hour and continued driving toward the medical center. Plaintiff thereafter said, "I hate my life, and just to hurt you mom, I hate you too.... You think I'm kidding you; I'll jump out of the car." She then opened the door and jumped. Defendant slammed on the brakes, turned the car around and saw her daughter's unconscious body lying on the side of the road. Plaintiff suffered serious head injuries and has no recollection of the incident, which occurred at approximately 2:00 a.m.
Defendant has testified that although Josephine's behavior was abnormal and irrational, it did not interfere with defendant's ability to drive.
Plaintiff has brought this action against defendant alleging defendant's negligence caused plaintiff's injuries. The allegations are that the incident "... was directly and proximately caused by the carelessness and negligence of the defendant." The complaint was recently amended to allow allegations that the actions of the defendant "... constitute a failure of parental supervision on behalf of the defendant that was willful, and/or wanton, and/or in reckless indifference to the life, safety, and well being of the plaintiff." Defendant has raised the issue of parental immunity as a complete defense to her actions.
The doctrine of parental immunity has been retained by the New Jersey courts in areas involving the exercise of parental authority or the provision of customary child care. Foldi v. Jeffries, 93 N.J. 533, 546, 461 A.2d 1145 (1983). The doctrine is a bar to suits alleging negligent supervision, but does not implicate immunity for a parent's willful or wanton misconduct in supervising the child. Id. at 547, 461 A.2d 1145.
The Appellate Division in Mancinelli v. Crosby, 247 N.J. Super. 456, 589 A.2d 664 (App.Div. 1991) set forth a four step *262 analysis to be used to determine whether parental immunity exists under the Foldi decision.
The first step in applying the Foldi analysis requires the judge to determine what acts or omissions by the parent a fact finder could reasonably find were the proximate cause of the child's injury. The next step is to determine whether that conduct is protected by parental immunity, i.e. whether it involves the exercise of parental authority or the provision of customary child care. If it does, the next step is to determine whether the conduct constitutes a lack of parental supervision. If it does, the final step is to determine whether a fact finder could reasonably find that the conduct was willful or wanton thereby removing it from the immunity. [Id. 247 N.J. Super. at 460, 589 A.2d 664]
The first question, therefore, is what acts or omissions by the parent could reasonably be found to be a proximate cause of the injuries. In this case the injuries were not caused by the negligent operation of the motor vehicle[1] in the traditional sense. There is no indication that defendant was either speeding or operating the vehicle in a reckless or careless manner. This is not a question of garden variety negligence such as was found in Mancinelli, where the child's mother caused her daughter's injuries when she carelessly led her onto a street into the path of a moving vehicle. The issue is not the manner of transporting the child to the hospital, but whether under the circumstances then known to defendant she should have continued to drive the car or pull over to the side of the road and wait for help. It was continuing to drive to the hospital, not how the car was operated, which caused Josephine's injuries.
Defendant was clearly caught on the horns of a dilemma. At approximately 2:00 a.m. her daughter was acting irrationally, being both verbally and physically abusive. She had a history of hospitalization for drug abuse approximately nine months earlier. As a precautionary measure against her daughter's jumping from the car, defendant could have driven the car to the side of the road and stopped, or proceeded to the hospital where she knew psychiatric *263 care would be available. She exercised her parental discretion and chose the latter. Her decision was made in her capacity as a parent as to how best to care for her child's emotional needs at the time; such a decision should be protected by parental immunity. Such action is clearly distinguishable from Mancinelli. A decision whether to have a child treated for an emotional problem, and the time and manner of treatment falls within a parent's philosophy of child-raising. That decision involves an essential element in providing customary child care which should be free from judicial intrusion.
With 20/20 hindsight it may be concluded that the decision was incorrect; however, a court should not substitute its own philosophy and standards of child-raising for those of the parent whose conduct is at issue. As was noted in Foldi, supra, in rejecting the California standard as set forth in Gibson v. Gibson, 3 Cal.3d 914, 479 Pac.2d 648, 92 Cal. Rptr. 288 (1971), of allowing the court to determine what reasonable parental guidelines should be:
We fear that this intrusion would result in jurors and judges substituting their own philosophy and standards of child raising for those of the parent whose conduct is at issue. Further, we do not believe that parents should be routinely forced to defend the `reasonableness' of their child-rearing practices in a court of law, at least where their behavior does not rise to a level of wanton misconduct requiring public attention. [Foldi v. Jeffries, 93 N.J. at 547, 461 A.2d 1145]
If, under circumstances as those herein presented, a jury is permitted to determine if defendant's actions constituted a breach of duty to her daughter, the jurors would effectively be substituting their own philosophy of child-raising for that of defendant, a procedure not sanctioned in this state.
Plaintiff also raises the issue of defendant's failure to assure that her daughter was properly secured in a seat belt. Plaintiff argues that such a failure is evidence of negligence which would bar application of the doctrine of parental immunity. Plaintiff's argument, however, is misplaced. The Passenger Automobile Seat Belt Usage Act, N.J.S.A. 39:3-76.2e-39:3-76.2k, was enacted to protect against enhanced injuries in the event of an *264 accident and for various other policy reasons. Waterson v. General Motors Corp., 111 N.J. 238, 264, 544 A.2d 357 (1988); Poole v. Janeski, 259 N.J. Super. 83, 611 A.2d 169 (Law Div. 1992). There is no evidence to suggest that the failure of plaintiff to be properly secured in a seatbelt was proximately related to her jump from the car. Seatbelts are not shackles, manacles or straitjackets. They are not intended to prevent a 17 year old from voluntarily getting out of an automobile.
The remaining issue is whether defendant's actions constitute willful and wanton misconduct. To be characterized as willful or wanton it must appear that "defendant, with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from her conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." Foldi, supra, 93 N.J. at 549, 461 A.2d 1145, citing McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305, 266 A.2d 284 (1970).
Defendant's actions were an attempt on her part to obtain help for her daughter. There is no evidence that she was indifferent to the consequences of her actions or that she consciously or intentionally did some wrongful act which produced her child's injuries. On the contrary, her actions were taken in an attempt to benefit her daughter's emotional health. She acted as an interested parent with her daughter's safety and welfare of primary concern. Rather than acting in any willful dereliction of her duty to her daughter, she acted in a manner she deemed to be appropriate under the circumstances. There is no evidence of willful or wanton misconduct.
The facts of this case directly bear upon the right of a parent to take such action as he or she deems necessary to safeguard the emotional welfare of his or her child. As long as the action does not constitute willful or wanton misconduct raising it to the level of *265 public concern, the courts cannot, and should not, become involved in such a sensitive area of child care.
The motion for summary judgment is granted.
NOTES
[1] The doctrine of parental immunity has been held inapplicable to suits brought by children against their parents for the negligent operation of a motor vehicle. France v. A.P.A. Transport Corp., 56 N.J. 500, 507, 267 A.2d 490 (1970).