817 A.2d 400

KATHRYN BUONO, BY HER GUARDIAN AD LITEM, VINCENT BUONO AND VINCENT BUONO, INDIVIDUALLY, PLAIN-TIFFS–APPELLANTS, v. MICHAEL SCALIA, DEFENDANT, AND ALPHONSE SCALIA AND LISA SCALIA, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 11, 2003—Decided March 11, 2003.

Before Judges Stern, Collester, and Alley.

*Matthew R. Pomo* argued the cause for appellants (*Doyle & Brady,* attorneys; *Mr. Pomo,* of counsel and on the brief).

*John V. Mallon* argued the cause for respondents (*Chasan, Leyner, Bariso, & Lamparello,* attorneys; *Mr. Mallon,* of counsel and on the brief).

The opinion of the court was delivered by

ALLEY, J.A.D.

Plaintiffs appeal from a December 7, 2001 summary judgment order dismissing their personal injury complaint. The action was brought on behalf of a child, Kathryn Buono, who was injured when Michael Scalia, then aged five years and nine months, struck her with the bicycle he was riding. Plaintiffs sued Michael on a theory of direct negligence and sued Michael's parents Alphonse and Lisa Scalia on a theory of negligent supervision. The trial judge determined that under *Foldi v. Jeffries,* 93 *N.J.* 533, 461 *A.*2d 1145 (1983), parental immunity exists in the instant situation, where failure to supervise was neither willful nor wanton, even though suit was not brought on behalf of the defendant parents' child. This appeal raises only issues as to the liability of Michael's father, inasmuch as it was conceded at oral argument before us that Michael is not liable to plaintiffs and that his mother also is

not liable because she had not undertaken to supervise him at the time of the events in suit. We affirm.

The essential facts are these. Michael Scalia, then five years and nine months old, injured sixteen month old Kathryn Buono when the bicycle he was riding struck her. The victim's father, Vincent Buono, filed this lawsuit on behalf of himself and on behalf of his daughter. Plaintiffs assert on appeal that Alphonse Scalia was negligent in supervising and controlling his son, and that his negligence proximately caused the accident which led to plaintiff Kathryn's injuries.

The accident occurred around mid-day on June 17, 2000, on Sunset Avenue in Bayonne, which was closed to traffic for a block party. Between fifteen and twenty neighbors, including approximately fourteen adults and six children, had gathered for the party at the time of the accident. Michael's mother Lisa was inside their home, preparing food to bring to the party. Vincent Buono was inside his home exercising. Neither Lisa nor Vincent observed the accident. Kathryn was standing on the street beside her mother, Diane Buono, who was engaged in conversation. Diane testified there was "a lot of activity" on the block including an open fire hydrant and "children riding bikes."

Michael was nearby riding a two-wheel bicycle. He had been taught to ride a bicycle by both his parents, and he had been riding without training wheels for about two months prior to the accident. Michael's parents allowed him to ride his bicycle outdoors as long as he remained on the sidewalk in front of his or in front of one or two neighboring houses in either direction. Because of the block party, however, Michael was permitted to ride in the street that day.

Alphonse Scalia was following his son Michael as he rode his bicycle that day, "keeping an eye on him[.]" Alphonse watched from five to eight feet behind, as his son came closer to Kathryn, who Alphonse claims walked toward the path of Michael's bicycle. Anticipating an accident, Alphonse shouted to Michael, "[W]atch out!" Michael did not respond to his father's warning, however,

struck Kathryn with his bicycle, and both children fell to the ground, with the bicycle landing on Kathryn.

Plaintiffs appeal from the grant of summary judgment, alleging that the trial court erred in determining that parental immunity barred plaintiffs' claims against Michael's parents because their supervision had not been negligent, willful, or wanton.

In granting the motion, the trial judge relied on *Foldi*, and noted that *Foldi* dealt with liability for injuries to an allegedly negligent parent's own child. The judge in effect reasoned from *Foldi* that the determinative consideration was not the relationship between the allegedly negligent parent and the injured person, but between the allegedly negligent parent and the child in need of supervision.

We review the trial court's determination under *Manalapan Realty v. Manalapan Tp. Committee*, 140 *N.J.* 366, 658 *A.*2d 1230 (1995), pursuant to which we need not give special deference to a trial judge's "interpretation of the law and the legal consequences that flow from established facts[.]" *Id.* at 378, 658 A.2d 1230.

Because of the centrality of *Foldi* to this appeal, we refer to it at length. The facts were that Jennifer Foldi, a two and one-half year old child, wandered off her own property and onto her neighbors' property, where she was bitten by their dog. Through her guardian *ad litem*, Jennifer brought suit against the neighbors, who filed a third party complaint against Jennifer's parents for failure to exercise reasonable care in supervising their child. Jennifer also amended her complaint to name her parents as defendants. Jennifer's mother had been keeping an eye on her while gardening but failed to notice for as long as five or ten minutes that Jennifer had left the yard.

The Supreme Court affirmed "that the parental immunity doctrine barred Jennifer's claim and the [neighbors'] third-party claim for indemnity." *Foldi, supra,* at 536, 461 A.2d 1145 (1983). The Court addressed in detail the development of the parental immunity doctrine and a split of authority in state courts.

As explained by the Court in *Foldi*, the history is as follows. 93 *N.J.* at 538–42, 461 *A.*2d 1145. The Court of Errors and Appeals first recognized the doctrine of parental immunity in *Reingold v. Reingold*, 115 *N.J.L.* 532, 181 *A.* 153 (1935), in which the court reasoned that parental immunity would preserve tranquility within the family. Three decisions of the Supreme Court, *Hastings v. Hastings*, 33 *N.J.* 247, 163 *A.*2d 147 (1960), *Heyman v. Gordon*, 40 *N.J.* 52, 190 *A.*2d 670 (1963), and *Franco v. Davis*, 51 *N.J.* 237, 239 *A.*2d 1 (1968), followed *Reingold*, applying the parental immunity doctrine in cases of ordinary automobile negligence. The Court noted that each of the three was decided by a "slim" 4–3 margin, and that Justice Jacobs had written a dissent in each, arguing that New Jersey should follow the lead of other states to abolish the doctrine. *Id.* at 538, 181 *A.* 153. Then, in *France v. A.P.A. Transp. Corp.*, 56 *N.J.* 500, 267 *A.*2d 490 (1970) (allowing "an unemancipated child to sue his or her parent for injuries that resulted from the parent's negligent operation of a motor vehicle"), and a companion case, *Immer v. Risko*, 56 *N.J.* 482, 267 *A.*2d 481 (1970) ("abolishing interspousal tort immunity in automobile negligence actions"), the Court recognized that the traditional justifications for these immunities, "preservation of domestic harmony, the deterrence of fraud and collusion, and the protection of the family exchequer had little remaining validity[]" given the "widespread use of liability insurance[.]" *Id.* at 539, 267 *A.*2d 481. Though the Court's holding in *France* only abolished parental immunity in the motor vehicle context, the Court referred in *Foldi* to the "general view that the immunity 'should be abrogated in this State[]' " despite a statement in *dictum* in *France* that "there may be areas involving the exercise of parental authority and care over a child which should not be justiciable in a court of law." *Id.* at 539–40, 461 *A.*2d 1145, citing *France, supra*, at 506–507, 267 *A.*2d 490.

The Court further reduced the scope of parental immunity in a case unrelated to parental supervision, *Small v. Rockfeld*, 66 *N.J.* 231, 330 *A.*2d 335 (1974), in which it allowed a minor child to sue his father for the father's wanton and grossly negligent drowning

of the child's mother. In *Small,* the Court "clearly reaffirmed [its] general disapproval of the parental immunity doctrine" but allowed that parental immunity "might still remain operative in 'special areas in the parent-child relationship, such as customary care and discipline.'" *Foldi* at 540, 461 *A.*2d 1145, citing *Small, supra,* at 244, 330 *A.*2d 335. On this point, *Small* cited a Wisconsin Supreme Court decision, *Goller v. White,* 20 *Wis.*2d 402, 122 *N.W.*2d 193, 198 (1963), which abolished parental immunity subject to the following exceptions:

> (1) where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services and other care.

The Court in *Foldi* then addressed an existing split among New Jersey courts on the question whether "a parent's negligent failure to supervise or instruct a child on safety principles[]" fell within the *Goller* exceptions. Compare *Foldi v. Jeffries,* 182 *N.J.Super.* 90, 440 *A.*2d 58 (App.Div.1981), and *Fritz v. Anderson,* 148 *N.J.Super.* 68, 73, 371 *A.*2d 833 (Law Div.1977) (holding that parents' failure to prevent their minor child from falling into an excavation site was "within the realm of parental authority and discretion" and thus, under the *Goller* exceptions protected by the doctrine of parental immunity against a counterclaim brought by the owners of the excavated property), with *Carey v. Davison,* 181 *N.J.Super.* 283, 437 *A.*2d 338 (Law Div.1981) (strictly construing the *Goller* exceptions to the abrogation of parental immunity so as not to cover a father who let go of his child's hand as she crossed a street, and holding that the "only tort cause of action sounding in negligent supervision in New Jersey is that in favor of third parties where a parent has failed to curb a child with known dangerous propensities, or has failed to supervise a child using or having access to a dangerous instrumentality[]"), and *Convery v. Maczka,* 163 *N.J.Super.* 411, 394 *A.*2d 1250 (Law Div.1978) (holding parental immunity did not bar a five year old's negligent supervision claim against his mother when she allowed him to play

unattended in a basement where he broke his arm by falling off a chair).

The Supreme Court in *Foldi* resolved the split as to "whether suits against a parent for negligent supervision fall within or without the *Goller* exceptions." 93 *N.J.* at 542, 461 *A.*2d 1145. Weighing the policy considerations, the Court explained that "preservation of domestic harmony" and "deterrence of fraudulent or collusive suits against third party insurers" no longer justified intrafamily tort immunity. The Court held that two justifications [1] survived to justify the Court's decision to retain parental immunity in "certain areas of activities within the family sphere involving parental discipline, care, and control that should and must remain free from judicial intrusion." *Id.* at 545, 461 *A.*2d 1145.

First, the Court recognized the right and duty parents have to "determine how the physical, moral, emotional, and intellectual growth of their children can best be promoted." *Ibid.* The Court acknowledged that, given there was "no recognized correct theory" on the right amount of freedom for a parent to accord a child:

> [s]ome parents believe that a child must be made self-reliant at an early age and accordingly give their children a great deal of independence. To outsiders, such independence may look like indifference or neglect.
>
> [*Id.* at 546, 461 *A.*2d 1145.]

Under *Foldi,* the Court aims to allow parents freedom to accord independence to their children without fear of second-guessing by such outsiders, unless such license rises to the level of willful or wanton neglect or indifference.

---

[1] These two surviving justifications tracked the two reasons given by the Appellate Division in affirming the grant of summary judgment by the trial judge. *Foldi v. Jeffries,* 182 *N.J.Super.* at 96–97, 440 *A.*2d 58. Both are discussed briefly in 1 Dan B. Dobbs, *The Law of Torts* § 280 (2001) as the "need[] to prevent the subversion of parental discipline" and to "protect parental freedom to rear children in accordance with their own beliefs and attitudes." *Id.* at 756–57, 440 *A.*2d 58. Dobbs questions the extent to which "categories like 'supervision' or 'parental discretion' will help judges focus on relevant policies better that the ordinary negligence rules." *Id.* at 757, 440 *A.*2d 58.

Second, the Court notes that individual differences among children make it impossible to articulate "one ideal 'formula' for how much supervision a child should receive at a given age." *Ibid.* In the Court's judgment, leaving parental immunity intact in cases where a parent, as opposed to a teacher or a babysitter, is charged with negligent supervision, takes note of the Court's conclusion that "[t]he parent is clearly in the best position to know the limitations and capabilities of his or her own children." *Ibid.* Moreover, the Court in *Foldi* determined that questions of "negligent supervision" or "the absence or inadequacy of a parent's supervision over his or her children[]" fall within the *Goller* exceptions, and thus are covered by the parental immunity doctrine. *Id.* at 546–57, 122 *N.W.*2d 193. It went on, however, to base its holding, not upon the relationship between the person charging negligent supervision and the person answering that claim, but upon the degree to which a parent had abdicated the duty to supervise the child in question. The Court determined that "while the doctrine of parental immunity is a bar to a suit alleging negligent supervision, it does not protect a parent who has willfully or wantonly failed to watch over his or her child." *Id.* at 546, 461 *A.*2d 1145.

We are satisfied that *Foldi* retained the parental immunity doctrine in the area of negligent supervision by a parent to apply to suits whether they are brought by that parent's child or by third parties. Throughout the opinion, the Court spoke of suits generally, rather than about claims made in particular by or on behalf of children against their parents.

As we read the Court's discussion in *Foldi*, it did not exclude suits by third parties from the scope of immunity when it referred in the following terms to actions in which parental immunity existed: "suits for negligent supervision[,]" "suits against a parent for negligent supervision[,]" "negligent supervision actions[]" "negligent supervision cases[,]" "a suit alleging negligent supervision," "[s]uits for mere negligent lack of supervision could be used as a tool of harassment and retaliation by devoiced parents[,]" "cases of

negligent supervision," "tort actions that involve a parent's willful or wanton misconduct[,]" and "parental supervision cases[.]" *Id.* at 541–42, 547–50, 461 *A.2d* 1145. We believe the Court would have been more specific if it had intended to limit immunity to cases brought against a parent by or on behalf of that parent's child. We acknowledge that in one instance the Court referred to "an action against a parent by a child for substantial injuries resulting from his or her parent's willful or wanton lack of supervision[,]" but this was not an assertion regarding New Jersey law but rather an explanation of why the Court was rejecting the option of "permit[ting] the doctrine of parental immunity completely to bar" such actions. *Id.* at 548, 461 *A.2d* 1145.

Here, we also note, Alphonse Scalia was in the best position to determine how much monitoring and support Michael required to ride his bicycle under the conditions of a block party. A uniquely difficult duty is placed upon a parent in Alphonse's situation to balance between providing close supervision and allowing a child freedom to practice a new skill. That duty is no less difficult if the child injures a third party rather than a family member.

In considering the scope of parental immunity as declared in *Foldi*, we note that the Court stated:

> In addition, the comparative fault of parents guilty of willful or wanton misconduct should be factored into the allocation of liability in cases involving third-party joint tortfeasors. Although it would perhaps be fairest to those third parties to consider the parent's contributory fault in all cases, we draw a line for policy reasons—as we do in offsetting damages in contributory negligence cases of less than 50%—that takes into account at least *some* of their interests. Hence, we go further than the line of purely intentional torts by also removing willful or wanton supervisory misconduct from the protective boundary of immunity. Thus, third-party claims may properly be brought against parents in appropriately severe lack-of-supervision cases.
>
> [*Id.* at 548–49, 461 *A.2d* 1145 (citations omitted).]

This passage is not dispositive of the issue before us, however, because we are not here concerned with the subject of the foregoing passage, namely, the "allocation of liability in cases involving third party, joint tortfeasors. Yet it is fair to view *Foldi* as being concerned with the parental duty of supervision rather

than being focused on whether the victim was or was not a member of the child's family unit.

Somewhat surprisingly, we have found no reported decision in which *Foldi* has been discussed by New Jersey courts in connection with the issue of whether it immunizes parents for negligent supervision claims brought by or on behalf of persons other than their own children.[2] *Foldi* of course acknowledges that policy concerns may properly drive necessary modifications of common

---

[2] The significant discussions of *Foldi* are as follows: *G.S. v. Department of Human Services, Div. of Youth and Family Services*, 157 N.J. 161, 179, 723 A.2d 612 (1999) (noting that *Foldi* "reflected a compromise between a parent's right to raise a child as he sees fit and the child's right to receive protection from injuries resulting from a parent's lack of supervision[]"); *Fielder v. Stonack*, 141 N.J. 101, 123, 661 A.2d 231 (1995) (citing *Foldi* for its comparison of negligent and willful misconduct in the context of a Torts Claims Act issue); *Crawn v. Campo*, 136 N.J. 494, 502, 643 A.2d 600 (1994)(using *Foldi* to illustrate the principle that "New Jersey tolerates immunities only for important reasons of public policy and in relatively exceptional situations, and therefore strongly endorses a standard of care based on ordinary negligence[]"); *Rochinsky v. State, Dept. of Transp.*, 110 N.J. 399, 422, 541 A.2d 1029 (1988) (deciding sovereign immunity question used *Foldi* to illustrate the principle that common law immunities may be abandoned or restricted when "they have outlived their usefulness"); *Weinberg v. Dinger*, 106 N.J. 469, 485, 524 A.2d 366 (1987) (same); *Grecco v. University of Medicine and Dentistry of New Jersey*, 345 N.J.Super. 94, 96, 783 A.2d 741 (App.Div.2001) (distinguishing *Foldi* where parents' behavior was willful or wanton); *Zacarias v. Allstate Ins. Co.*, 330 N.J.Super. 231, 236, 749 A.2d 394 (App.Div.2000), *aff'd*, 168 N.J. 590, 775 A.2d 1262 (2001) (using *Foldi* to argue in dissent that a purchaser of homeowner's insurance has a reasonable expectation that all legally cognizable claims are covered); *Horesh v. State Farm Fire & Cas. Co.*, 265 N.J.Super. 32, 35, 625 A.2d 541 (App.Div.1993) (affirming decision that an insurance policy would not cover damages incurred by a mother charged with wilful and wanton careless supervision of her child); *Horn By and Through Kirsch v. Price*, 255 N.J.Super. 350, 353, 605 A.2d 274 (App.Div.1992) (affirming dismissal of a negligent supervision action brought by child against her mother because child could not establish more than negligence); *Mancinelli v. Crosby*, 247 N.J.Super. 456, 459, 589 A.2d 664 (App.Div.1991) (affirming a judge's decision not to submit claim against a mother to the jury where judge found her conduct not to be willful and wanton); and *Murray by Olsen v. Shimalla*, 231 N.J.Super. 103, 106, 555 A.2d 24 (App.Div.1989) (setting forth a four step method of applying *Foldi* in a suit by an injured child against his father).

law immunities.[3]   Despite this lack of reported authority since *Foldi*, the policy concerns embraced in *Foldi* in our view provide determinative guidance here.   The Court embraced respect for differences in parenting philosophies and for the degree to which parents understand the uniqueness of their own children.   Regardless of whether the person who seeks recovery for parents' apparent failure to keep their child from causing harm is a family member, these two policy concerns, outlined in *Foldi*, work to insulate Alphonse Scalia from scrutiny by judge or jury.

One application of *Foldi* in the common situation of a suit by a child against that child's parent for negligent supervision illustrates why the holding in *Foldi* appropriately should be deemed to include a bar against suits by third parties.   A trial court held in *DeMarco v. DeMarco*, 274 *N.J.Super.* 257, 261, 643 *A.2d* 1053 (Law Div.1992), that parental immunity covered a mother's decision not to pull over while her daughter threatened to jump out of the car in which the two were traveling.   This application of the parental immunity doctrine illustrates why the doctrine, as limited, has been retained.   In *DeMarco*, a mother, while driving with her unemancipated daughter, determined by her daughter's behavior and admissions that her daughter needed drug rehabilitation treatment, something the daughter had required previously. *Id.* at 260, 643 *A.2d* 1053.

As the mother drove her daughter toward the treatment facility, her daughter's behavior caused the mother to stop for a period to let her daughter walk, then the mother told the daughter to return to the car.   *Ibid.* The daughter continued behaving irrationally by screaming and threatening to jump from the moving car.   *Ibid.* After the mother decided to continue driving toward the treatment

---

[3] "To justify a prohibition of the enforcement of their rights, a very substantial showing must be made that such prohibition will help achieve an important countervailing policy."   *Id.* at 544, 461 *A.2d* 1145.   *See also Rochinsky, supra,* at 422, 541 *A.2d* 1029 (discussing immunity for snow removal); and *Weinberg, supra,* at 484–85, 524 *A.2d* 366 (discussing municipality's common law duty with regard to water supply).

facility rather than to pull over the car, the daughter jumped from the car, sustained injuries, and brought suit against her mother. 274 *N.J.Super.* at 261, 643 *A.2d* 1053. Her claim was properly dismissed by the trial court under *Foldi. Ibid.*

We conclude that under *Foldi* the same result is appropriate if a party other than the daughter (a pedestrian, for example, hit by the daughter's body) brought suit for injuries allegedly proximately caused by the mother's decision to continue driving her daughter to drug treatment. In our view, a parental decision to continue or not continue driving in this context is exactly the type of parenting decision, in the absence of willful indifference or neglect, which should be protected by the doctrine of parental immunity. A parent contending with this level of stressful decision-making should not have a decision subject to second-guessing by "outsiders" unfamiliar with her daughter's past and personality, alien to the mother's own philosophical perspective, and guided by twenty-twenty hindsight. Of hindsight, the Court cautioned in *Foldi:*

> we can conceive of few accidental injuries a child might sustain that could not have been prevented by closer supervision by his or her parents. Hindsight invariably will expose some slight oversight, some failure to take yet another precaution that somehow contributed to the child's mishap. No parent can do everything. If such claims were allowed, it would be the rare parent who conceivably could not be called to account in the courts for his or her conduct.
>
> [93 *N.J.* at 547, 461 *A.2d* 1145.]

We note further that although the American Law Institute (ALI) advocates a different position on the doctrine of parental immunity than the New Jersey Supreme Court has approved, the ALI provides support for the proposition that parents must be accorded greater discretion in decisions they make regarding the supervision of their children. Thus the Restatement (Second) of Torts § 895G, Comment j cites the Wisconsin Supreme Court's decision in *Goller, supra,* approvingly as having for "all practical purposes completely abrogated the immunity between parent and child[.]" The comment goes on to note the *Goller* exceptions and to say that the "*Goller* case has now been followed by a substantial minority of jurisdictions." That comment further states that

"under the better law the immunity between parent and child is entirely abrogated." *Ibid.* The Restatement describes the immunity as existing only between the parent and child, stating in pertinent part, "A parent or child is not immune from tort liability to the other solely by reason of that relationship." Restatement (Second) of Torts § 895G(1).[4]

We acknowledge with respect the learned views expressed in the Restatement. We are governed, however, by the decisions of our Supreme Court, and we are satisfied that under *Foldi* the trial judge's order should be affirmed. Inasmuch as the supervision of Michael by his father was not willfully or wantonly negligent, Michael's father is immune even though this was not intra-family litigation but a lawsuit brought respecting alleged injuries to a third party.

The *Foldi* holding did not represent an expansion of parental immunity, and indeed that decision was rendered in a period in which the trend was to limit rather than expand such immunity. But *Foldi* nevertheless represents a recognition of the legitimacy of parental immunity in particular circumstances. Our decision today represents, not an attempt to expand immunity, but simply our determination that the immunity declared in *Foldi* embraces the claims alleged by the injured third party in this case that are

---

[4] The Restatement takes the position that "the chief reason usually advanced today for the immunity is that domestic peace and parental discipline and control would be disturbed by permitting an action for a personal tort." Comment c. Section 895G goes on to offer an alternative way to address the intuition that respect should be given to parental discretion in matters of supervision. Comment k to this section proposes a more forgiving standard of reasonableness in determining whether parental supervision has been negligent:

> Conduct involving the exercise of parental authority or supervision is essential to the parent-child relationship. This is also true of the performance of parental duties such as the use of care to provide a safe place to live or adequate necessaries or proper instruction and training. Parental discretion is involved, and to say that the standard of a reasonable prudent parent is applied should be to recognize the existence of that discretion and thus to require that the conduct be palpably unreasonable in order to impose liability.

said to have arisen from the negligent supervision of Michael by his father.

STERN, P.J.A.D. (concurring).

As the majority develops, plaintiffs appeal from an order of December 7, 2001 which grants summary judgment to defendants and dismisses their complaint with prejudice in this case involving injuries sustained by a sixteen-month old minor. The injuries were caused by defendants' son who was less than six years old at the time.

Plaintiffs argue that "the trial court erred in applying the parental immunity doctrine to the plaintiffs' action against defendant Alfonse Scalia for the negligent supervision of his son, Michael Scalia." Specifically, plaintiffs contend that "the parental immunity doctrine does not ... prevent an innocent, unrelated, injured third party from bringing an action against the parents for their negligence in supervising their **own** unemancipated child."

Many of the policy reasons that originally supported the concept of immunity, such as avoidance of fraud and preservation of family harmony, do not apply in the third party setting, irrespective of any increased use of homeowners' and similar liability insurance coverage. *Foldi v. Jeffries,* 93 *N.J.* 533, 539, 461 *A.*2d 1145 (1983); *France v. A.P.A. Transp. Corp.,* 56 *N.J.* 500, 504–06, 267 *A.*2d 490 (1970). Yet there is no dispute that Kathryn Buono could not sue her mother, Diane Buono, who might have been negligent in failing to watch more carefully and to protect her sixteen-month old daughter as the bicycle approached, and that Alphonse Scalia could not "third party" Diane Buono in the case against him. This flows from *Foldi v. Jeffries, supra,* because Diane Buono's negligent supervision of her daughter was neither willful nor wanton,[5]

_____

[5] In *Foldi,* the Supreme Court concluded "that the doctrine of parental immunity will continue to preclude liability in cases of negligent supervision, but not for a parent's willful or wanton failure to supervise his or her children." 93

and the doctrine of parent-child immunity has not been abrogated in "situations that involve the exercise of parental authority and customary child care." *Foldi, supra,* 93 *N.J.* at 551, 461 *A.*2d 1145.

I concur in the opinion of the court because it accurately examines New Jersey law as it now stands, and because a reexamination of *Foldi,* based on developments of the last twenty years, can come only from the Supreme Court. Moreover, I am satisfied that the ability of the Buonos to sue Alfonse Scalia cannot be fully analyzed without reexamining his inability to bring a third party action against Diane Buono, which is concededly barred by *Foldi.*

*N.J.* at 549, 461 *A.*2d 1145. Mrs. Buono's lack of supervision was no more willful or wanton than that of Mrs. Foldi.