KEITH MURRAY, AN INFANT BY HIS GUARDIAN AD LITEM, OTTO OLSEN, AND OTTO OLSEN, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. PATRICK SHIMALLA, DEFENDANT-RESPONDENT, AND DOUGLAS MURRAY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 5, 1989—Decided February 28, 1989.

Before Judges BRODY, ASHBEY and SKILLMAN.

*Charles P. Hopkins* II, argued the cause for appellant (*Richard J. Sauerwein,* attorney; *Charles P. Hopkins* II on the brief).

*John R. Gorman* argued the cause for respondent Keith Murray (*Lutz & Shafranski,* attorneys; *John R. Gorman,* on the brief).

*Richard D. Millet* argued the cause for respondent Patrick Shimalla (*Hampson & Millet,* attorneys; *Richard D. Millet,* on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

Ten-year-old Keith Murray (plaintiff), by his guardian ad litem, and his guardian ad litem individually [1] brought this personal injury action against plaintiff's father (defendant) and Patrick Shimalla, another young boy. The two boys and a third young boy, Chris Hague, were using gasoline to make a fire in a wooded area behind the Murray home. The boys had obtained the gasoline from an unlocked storage shed on the Murray property. Plaintiff was injured when the gasoline ignited. We granted defendant's motion for leave to appeal an order denying his motion for summary judgment. The issue is whether defendant is protected from suit by the doctrine of parental immunity.

The current state of the law in New Jersey appears in *Foldi v. Jeffries,* 93 *N.J.* 533 (1983). There the Court made it clear that the doctrine of parental immunity has been abolished except "in areas involving the exercise of parental authority or the provision of customary child care." *Id.* at 546. The Court carved an exception from that exception "in one discrete area of parental authority" where an injury results from "the absence or inadequacy of a parent's supervision over his or her children." *Ibid.* In such a case, the parent is liable but only if the lack of parental supervision is willful or wanton. *Id.* at 549.

In denying defendant's motion for summary judgment in the present case, the trial judge ruled, on the basis of interrogatory answers and deposition excerpts, that plaintiff's injury was not the result of the absence or inadequacy of defendant's supervi-

---

[1] The complaint does not explain why the guardian ad litem is entitled to damages as an individual.

sion. Inferentially, he concluded that the immunity did not apply because the accident did not involve the exercise of parental authority or the provision of customary child care. The issue to be tried as he saw it was simply whether defendant was negligent:

> ... whether the parent under such circumstances should have reasonably foreseen that leaving a can of gasoline unattended given ten year-old boys and their propensity, whether that is negligence now on his part.

The motion was properly denied, but the judge ruled prematurely that parental immunity was not implicated.

The first step in applying the *Foldi* analysis requires the judge to determine what acts or omissions by the parent a fact finder could reasonably find were the proximate cause of the child's injury. The next step is to determine whether that conduct is protected by parental immunity, i.e., whether it involves the exercise of parental authority or the provision of customary child care. If it does, the next step is to determine whether the conduct constitutes a lack of parental supervision. If it does, the final step is to determine whether a fact finder could reasonably find that the conduct was willful or wanton thereby removing it from the immunity.

We first examine how the injury occurred in order to determine what acts or omissions by defendant might reasonably have proximately caused plaintiff's injury. Plaintiff gave the following account of the accident in an interrogatory answer:

> Patrick Shimalla usually carried matches and liked to make fires. Before the incident, the three boys collected wood and grass and decided to build a fire on an over-the-road vehicle trail to the rear and to the left of the plaintiff's home slightly into the woods. Patrick Shimalla had the matches to light the fire. There was difficulty starting the fire and the infant plaintiff and Christopher Hague went to a shed on the Murray property which is to the rear of the Murray house, and got some gasoline out of a can and put it into a peanut can and brought it back to the fire they were trying to start. The boys had easy access to the shed in that it was not locked. Finally, the fire got started by dipping grass into the gasoline can and throwing the gasoline and grass onto the fire. Finally, the gas ran out, and the infant plaintiff and Christopher made a second trip to the shed to get more gasoline. Again, the same procedure was repeated. Immediately before the incident, Patrick Shimalla had the gasoline can in his hand, and the gasoline in it caught fire. Patrick then threw the can,

which was aflame, up in the air, in the direction of the infant plaintiff and the flaming gasoline then poured down and on the infant plaintiff which caused his severe burns.

Patrick Shimalla described the accident in answer to an interrogatory as follows:

Plaintiff, Keith Murray, was burned by gasoline that exploded from a can he was holding. While Keith Murray was pouring gasoline onto a piece of wood I was holding, Chris Hague touched a smoking stick to the stream of gas that Keith Murray was pouring from the can he was holding.

Chris Hague [2] gave the following account of the accident in his interrogatory answer:

Before the accident, Keith Murray, Patrick Shimalla and myself, Chris Hague, were together on Keith Murray's porch, eating. During that time, I was playing with a lighter. Keith Murray then stated he wanted to make a fire. All three of us began collecting wood and leaves in which to build the fire. The pile of woods and leaves was set on fire when someone threw a match on it. I am not sure who threw the match on the pile. We all continued to place wood and leaves on the fire. Keith Murray then stated we should get some gasoline from his shed. Keith Murray and I went to the shed three (3) times and each time everyone took turns putting some gasoline on the fire. But the third time, the can of gasoline was not returned to the shed, instead it remained within inches from the fire. Before I knew it, a log had rolled off the pile and hit the can of gasoline, and like fluid lighter being sprayed over an open grill, the can caught on fire [and burned plaintiff]. . . .

Evidence of defendant's role in causing the accident also appears in plaintiff's deposition:

Q  Where was the can of gasoline kept in the shed?

A  Right in the front.

Q  Was it on a shelf or on the floor?

A  On the floor.

Q  Was there at that time a lock on the shed?

A  Yeah, but it was unlatched.

Q  For what period of time, and I'm talking as of the time of your accident— was it unlatched at the time of your accident?

A  Yeah.

Q  For what period of time had there been no locked shed?

---

[2] At one time Chris Hague and his parents had been third-party defendants in this action. Chris's parents obtained a summary judgment. As far as we know, Chris is still a party although not named in the caption.

A  Mostly all the time except when we went outside and went on vacation or something.

\*       \*       \*       \*       \*       \*       \*       \*

Q  Who had the key or keys to that lock on the shed?
A  My father.

Plaintiff also testified in his deposition about having his father's permission to fill the gas tank of his all terrain vehicle (ATV) with the gasoline that was stored in the shed:

Q  Whose ATV was that?
A  Mine.

\*       \*       \*       \*       \*       \*       \*       \*

Q  When you needed to have the ATV filled, normally who would fill it?
A  My father.
Q  Were there times when your father wasn't around and you filled it yourself?
A  Yes, a couple of times.
Q  Where did you go to get the gasoline?
A  In my shed.

\*       \*       \*       \*       \*       \*       \*       \*

Q  Did your father ever instruct you in how to pour gasoline into your ATV?
A  Yeah, he taught me how to do it, but he said not unless you really need it and unless he's—if he's not around and unless I really need it.
Q  So he told you that if he wasn't around and you needed to fill up your ATV, then you could do it?
A  Yeah.

\*       \*       \*       \*       \*       \*       \*       \*

Q  You were ten years old at the time?
A  Yes.

■  From this evidence, a jury could reasonably find that plaintiff's injury was proximately caused by defendant's negligence in two distinct though related respects. First, a jury could find that defendant unreasonably exposed children, including plaintiff, to the risk of injury when he stored gasoline, an extremely dangerous substance when misused by children, on the floor of a shed that he left unlocked. Second, a jury could find that defendant unreasonably exposed plaintiff to the risk of injury from the misuse of gasoline by permitting him

access to and the use of gasoline for his ATV without parental supervision.

After identifying defendant's acts or omissions that may proximately have caused the accident, the next step is to determine whether that conduct is protected by the doctrine of parental immunity, i.e., whether it involves the exercise of parental authority or the provision of customary child care.

Storing gasoline on the floor of an unlocked shed does not involve the exercise of parental authority or the provision of customary child care. To be sure, any allegedly negligent act or omission by a parent that causes his child injury may in some sense "involve" the exercise of parental authority. However, abolition of the immunity would be of little effect if the immunity were to attach whenever a parent negligently causes his child injury. Where a parent's alleged negligence does not focus on the child's upbringing, the fact that in a particular instance a child happens to be injured by a parent's negligence does not immunize the parent from liability. Storing gasoline in a manner that gives children access to it is not an exercise of parental authority and therefore is not protected by parental immunity.

On the other hand, if a jury finds that defendant's only negligence was giving his child permission to use gasoline without supervision to fill his ATV, giving that permission, though negligence, is protected by parental immunity as an exercise of parental authority because it focused on the child's upbringing. Discussing the reason for retaining the immunity for that kind of parental judgment, *Foldi* states:

> There is no recognized correct theory on how much freedom a parent should allow his or her children. Some parents believe that a child must be made self-reliant at an early age and accordingly give their children a great deal of independence. To outsiders, such independence may look like indifference or neglect. On the other hand, some parents believe that their children must be vigilantly monitored from infancy through adolescence. To outsiders, such vigilance and concern may appear to shelter the children from the world and to thwart their development. [*Id.* at 546.]

Even if defendant thereby qualifies for the immunity, however, he would still be liable if his conduct may fairly be characterized as bearing on his supervision of plaintiff and his conduct is found to be willful or wanton. *Foldi* dealt with a mother who became momentarily preoccupied and literally failed to supervise her two-year-old daughter. The child wandered onto neighbors' property and was bitten by their dog. However, *Foldi* envisions parental supervision in a broader sense than keeping one's child in sight:

> In addition, we can conceive of few accidental injuries a child might sustain that could not have been prevented by closer supervision by his or her parents. Hindsight invariably will expose some slight oversight, some failure to take yet another precaution that somehow contributed to the child's mishap. [*Id.* at 547.]

It is at least as much a failure of supervision to knowingly permit a 10–year–old to be exposed to the known risks of gasoline as it is to inadvertently allow a toddler to wander off and be exposed to unknown risks. We conclude that giving a 10–year–old unsupervised access to gasoline to fill his ATV, constitutes a form of parental supervision that will subject the parent to liability if the finder of fact determines that the conduct was willful or wanton, and a proximate cause of the child's injury.

We are not prepared on this record to conclude that plaintiff will be unable to prove that defendant's conduct was willful or wanton. *Foldi* describes the concept as an "intermediary position between simple negligence and the intentional infliction of harm," *id.* at 549, and endorses the following definition expressed in *McLaughlin v. Rova Farms, Inc.*, 56 *N.J.* 288, 305–306 (1970):

> [I]t must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> [W]illful [or] wanton misconduct signifies something less than an intention to hurt. To establish that condition it is not necessary that the defendant himself recognize his conduct as being extremely dangerous; it is enough that he know,

> or has reason to know, of circumstances which would bring home to the realization of the ordinary reasonable man the highly dangerous character of his conduct.

We note that though belated, during the pendency of this appeal plaintiff gave notice to take defendant's deposition. In view of plaintiff's burden to establish that defendant's conduct was willful or wanton, plaintiff should be permitted to take defendant's deposition before trial. Defendant may thereafter move for partial summary judgment respecting plaintiff's parental supervision claim.

To summarize, if there is evidence at trial that defendant stored gasoline in a manner that made it accessible to children, the jury may consider whether that conduct was negligent and if so whether it proximately caused plaintiff's injury. If the jury finds that defendant is not liable on that theory of negligence, but there is also evidence at trial that defendant acted willfully and wantonly by permitting plaintiff to use gasoline for his ATV without supervision, the jury may consider whether that conduct was willful and wanton and if so whether it proximately caused plaintiff's injury.

The order denying defendant's motion for summary judgment is affirmed as modified herein and the matter is remanded for trial.