247 N.J. Super. 456 (1991)
589 A.2d 664
JACQUELINE MANCINELLI, A MINOR BY HER GUARDIAN AD LITEM, BARBARA MAGUIRE AND BARBARA MAGUIRE, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
EDWARD CROSBY, JR., DISPLAY DIE SERVICE, AND JOHN DOE (A FICTITIOUS NAME), DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS, AND SUSAN CHIAPETTA, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1991.
Decided April 26, 1991.
*457 Before Judges KING, R.S. COHEN and STERN.
Daniel J. Keenan argued the cause for appellant (Farabaugh, Frieland, Giles & Hillman, attorneys).
John D. Allen argued the cause for respondent Edward Crosby, Jr. (Harwood Lloyd, attorney).
*458 No brief filed on behalf of respondent Mancinelli.
The opinion of the court was delivered by KING, P.J.A.D.
This is an appeal following a jury's determination that the mother of an injured child was solely liable for her child's injuries. The issue on appeal is whether the judge erred in refusing to find the defense of parental immunity a bar to the claim by the child against her mother.
On May 11, 1986 Paul and Susan Chiapetta drove with their two children, plaintiff Jacqueline Mancinelli and Megan Chiapetta, to a family boardwalk outing in Point Pleasant Beach. The Chiapettas parked their car in a municipal lot adjacent to Ocean Avenue. The boardwalk and amusement rides were located across the street from the parking lot on Ocean Avenue. The Chiapettas left their car and walked to the curb of Ocean Avenue. Despite the presence of controlled intersections with marked pedestrian crosswalks to their north and south along Ocean Avenue, the Chiapettas decided to cross in the middle of the block.
Automobile and pedestrian traffic flow on Ocean Avenue was heavy on this bright, warm Sunday, (Mother's Day), at 4:30 p.m.. Susan Chiapetta led seven-year-old Jacqueline by the hand and Paul Chiapetta followed with ten-month old Megan in a stroller. Susan Chiapetta stepped off the curb onto Ocean Avenue with Jacqueline in tow. Almost immediately, a car owned by defendant Display Die Service (Display) and driven by defendant Edward Crosby struck and injured both Susan and Jacqueline. Several eyewitnesses said that Susan Chiapetta "darted" or "rushed" out into the street.
Plaintiff Jacqueline Mancinelli, by her then-guardian ad litem Susan Chiapetta, Susan Chiapetta individually, and Paul Chiapetta, filed suit against Edward Crosby and Display for Jacqueline's personal injuries. Defendants Crosby and Display answered and counterclaimed against Susan and Paul Chiapetta alleging her negligence as a cause of the accident and seeking contribution under the Joint Tort Feasors Contribution Law, N.J.S.A. 2A:53A-1 to -5. Jacqueline, by her newly-appointed *459 guardian ad litem Barbara McGuire and McGuire individually, then filed an amended complaint adding her mother, Susan Chiapetta, as a defendant.
Prior to trial, counsel for defendants Crosby, Display and Susan Chiapetta and their carriers agreed to stipulate the damages for Jacqueline's personal injury case at $75,000. Responsibility for and apportionment of the liability among the defendants would abide (1) a jury trial on the issue of liability and (2) resolution of Susan Chiapetta's legal defense of parental immunity as a bar to the claim by her child. The jury returned a verdict finding Susan Chiapetta 100% negligent and exonerating Crosby. The judge then denied Susan Chiapetta's motion for judgment notwithstanding the verdict based on the bar of parental immunity and entered judgment of liability in favor of plaintiff Jacqueline Mancinelli solely against her mother.
Defendant Susan Chiapetta appeals the judge's rejection of the defense of parental immunity as a bar to the claim. Defendants Crosby and Display cross-appeal from the judge's supplementary finding that Susan Chiapetta's conduct was not willful and wanton, thus precluding any legal bar of parental immunity, and his refusal to submit that issue to the jury. We affirm.
Public policy reasons exist for retention of the doctrine of parental immunity for matters arising out of the exercise of parental authority or the provision of customary child care. Foldi v. Jeffries, 93 N.J. 533, 546, 461 A.2d 1145 (1983) (failure to carefully supervise two and one-half-year old playing in yard not actionable). "There are certain areas of activities within the family sphere involving parental discipline, care, and control that should and must remain free from judicial intrusion. Parents should be free to determine how the physical, moral, emotional, and intellectual growth of their children can best be promoted." Foldi, 93 N.J. at 545, 461 A.2d 1145. Willful or wanton supervisory misconduct however is not protected by immunity. Foldi, 93 N.J. at 548, 461 A.2d 1145.
*460 Although the Supreme Court retained the doctrine of parental immunity in areas involving the exercise of parental authority or the provision of customary child care, it specifically deferred to the lower courts for further refinements of the doctrine "on a case-by-case basis." Foldi, 93 N.J. at 546, 461 A.2d 1145. We had an opportunity to apply the doctrine recently in Murray by Olsen v. Shimalla, 231 N.J. Super. 103, 555 A.2d 24 (App.Div. 1989). There a ten-year-old brought an action against his father for personal injuries sustained when the minor was pouring gasoline which he had taken from his father's unlocked storage shed onto a fire. The father had given his son access to and instructions on how to pour gasoline for purposes of refueling the minor's all-terrain vehicle.
In an opinion by Judge Brody, we clarified the analysis used in determining whether parental immunity existed under Foldi.
The first step in applying the Foldi analysis requires the judge to determine what acts or omissions by the parent a fact finder could reasonably find were the proximate cause of the child's injury. The next step is to determine whether that conduct is protected by parental immunity, i.e., whether it involves the exercise of parental authority or the provision of customary child care. If it does, the next step is to determine whether the conduct constitutes a lack of parental supervision. If it does, the final step is to determine whether a fact finder could reasonably find that the conduct was willful or wanton thereby removing it from the immunity. [Shimalla, 231 N.J. Super. at 106, 555 A.2d 24].
In applying this analysis in Shimalla, we ruled that the minor's injuries could be attributable to the father's simple negligence in leaving gasoline in an unlocked storage shed accessible to minors in general or in giving his son permission to use gasoline without supervision. The latter conduct, although negligence, would be protected by parental immunity absent a finding that it was willful or wanton misconduct in the supervision of the child. The former conduct would be actionable. Shimalla, 231 N.J. Super. at 109-110, 555 A.2d 24.
Applying the Foldi analysis, we conclude that the parent's negligence in this pedestrian knockdown case before us is not protected by parental immunity. According to the jury's verdict, Susan Chiapetta alone caused her daughter Jacqueline's *461 injuries (and her own injuries) when she carelessly led her onto Ocean Avenue directly into the path of a moving vehicle. This was not a matter of customary child care, discipline or supervision. This was simple, garden-variety negligence by the parent which exposed both the parent and the child to injury. Although Susan Chiapetta may have literally exercised parental authority in transporting her child across the street, this is not the sort of exercise of parental authority in child-rearing intended for protection by the parental immunity doctrine.
The doctrine of parental immunity was intended to protect a parent's determination of how the physical, moral, emotional or intellectual growth of a child can best be promoted. Foldi v. Jeffries, 93 N.J. at 545-546, 461 A.2d 1145. This case simply involves a mother's negligence in attempting to cross a street with the child at a dangerous location without making proper observation. Denial of parental immunity in this action does not constitute judicial intrusion into a parent's philosophy of child rearing but only simple recognition of the parent's breach of a duty of due care which we all generally owe to both ourselves and others in the community. While we recognize that a duty to safely lead a child (and oneself) across a street will usually arise in the parent-child relationship, we are not persuaded that a breach of this ordinary duty of care and common sense should be immune from tort liability.
A review of the varied decisions in our sister states which recognize the doctrine of limited parental immunity does not dissuade us from our decision. See Annotation, "Liability of Parent for Injury to Unemancipated Child," 6 A.L.R. 4th 1066 (1981 and Supp.). In Sandoval by Rodriquez v. Sandoval, 128 Ariz. 11, 623 P.2d 800 (1981), a minor child was injured when he drove his tricycle through a gate negligently left open by his parents and was hit by a car. The Arizona Supreme Court held that the parent's negligence in leaving the gate open arose out of an act of parental care and control and was immune from suit. This is very similar to our Foldi v. Jeffries, supra, applying immunity to careless supervision of a two and one-half *462 year old while she was playing in the garden. An Illinois appellate court decided that a minor child struck by an automobile in front of his mother's home could maintain an action against the parent for negligently failing to trim trees in front of the home which obstructed the driver's view. Cummings v. Jackson, 57 Ill. App.3d 68, 14 Ill.Dec. 848, 372 N.E.2d 1127 (1978). That court decided that the mother's actions violated a city ordinance which imposed a duty owed to the general public and she was not immune. In Ard v. Ard, 414 So.2d 1066 (Fla. 1982), the Florida Supreme Court allowed a minor to maintain a suit against his mother for injures received after the parent negligently "unloaded" the child from her car into a street, "placing him in a dangerous and perilous position," and the child was struck by another vehicle. That court retreated from the doctrine of full parental immunity but only to the extent of the parent's insurance coverage. The Florida Supreme Court decided that the policy reasons behind the doctrine of parental immunity: protection of family tranquility, preservation of family assets, and preventing fraud and collusion among parties to a lawsuit, were not persuasive concerns when automobile liability insurance existed to protect the mother and satisfy the claim.
In Agin v. Likens, 81 Misc.2d 690, 366 N.Y.S.2d 798 (Spec. Term 1975), a minor was injured when his mother was struck by a moving vehicle while attempting to carry the child across an unlit highway at night. The New York trial-level court barred the minor from suing his mother. The court concluded that the mother's decision to control the child by oral directions, physical guidance or picking him up should not be the subject of court supervision. Agin, at 691, 366 N.Y.S.2d 798. The court thought that the parent's decision to transport a child from one place to another and the manner in which that transportation should be effected should be beyond judicial review and not actionable. Id. at 692, 366 N.Y.S.2d 798. Another New York trial-level court, in Yun Jeong Koo v. St. Bernard, 89 Misc.2d 775, 392 N.Y.S.2d 815 (Spec. Term 1977), *463 reached the opposite result when the driver of a motor vehicle, defending an action by a minor for negligence asserted that the child's parents had "pushed" the child "in such a way as to cause contact" with defendant's vehicle. That court held the defendant was not precluded from seeking recovery of contribution from the parents when the parents' conduct toward the child would have been tortious if done by one ordinary person to another. Id. at 779, 392 N.Y.S.2d 815.
We do not view the judge's ruling or the jury's verdict in the case before us as an intrusion into "those highly subjective factors" involving a parent's philosophy of child care and supervision. See Foldi v. Jeffries, 93 N.J. at 546, 461 A.2d 1145. The only judgment involved here is how to safely cross a street, not how to care for or rear a child. See Gross v. Sears Roebuck & Co., 158 N.J. Super. 442, 386 A.2d 442 (App.Div. 1978) (no immunity for father's negligent operation of a power mower); cf. Carey v. Davison, 181 N.J. Super. 283, 437 A.2d 338 (Law Div. 1981) (telling child when to cross the street was apparently protected by immunity).
As Justice Garibaldi said in Foldi v. Jeffries, 93 N.J. at 544, 461 A.2d 1145, "[we] start with the fundamental principle that liability ordinarily should be imposed upon the those who wrongfully injure others." Minor children are entitled to the same redress for wrongs as anyone else. Id. In the case before us, we must characterize the mother's conduct in carelessly crossing the street and towing her child into a zone of danger as either (1) immunized parental supervision or (2) simple, ordinary negligence. We chose the latter characterization. Again, as the Supreme Court said in Foldi: "To justify a prohibition of the enforcement of [children's] rights, a very substantial showing must be made that such prohibition will achieve an important countervailing policy." Id. We see no such showing of any countervailing policy in this instance which justifies shielding the mother from tort liability.
Affirmed; the cross-appeal is dismissed as moot.