265 N.J. Super. 32 (1993)
625 A.2d 541
ESTA HORESH, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
STATE FARM FIRE & CASUALTY COMPANY, DEFENDANT-APPELLANT, CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 30, 1993.
Decided May 27, 1993.
*34 Before Judges PRESSLER, R.S. COHEN and KESTIN.
Craig M. Terkowitz argued the cause for appellant, cross-respondent (Vitiello, Seltzer, Terkowitz & Vitiello, attorneys, Kenneth A. Seltzer of counsel and on the brief).
David L. Ploshnick argued the cause for respondent, cross-appellant (Baer, Arbeiter & Ploshnick, attorneys, Mr. Ploshnick of counsel and on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Plaintiff's husband started an action to recover for an injury to their infant son. Defendants filed a third-party complaint against plaintiff for contribution and indemnification. State Farm was the family's homeowners' insurer. Plaintiff requested State Farm to defend her, but it declined to do so. State Farm took the position that the claim was excluded by the terms of the insurance policy. Plaintiff then sought a declaratory judgment that State Farm both covered the third-party claim and was obliged to defend it. The Law Division ruled that the claim was *35 not covered, but that State Farm nevertheless had the duty to defend plaintiff against it.[1] State Farm appealed the ruling that it had to defend; as to it, we reverse. Plaintiff cross-appealed the ruling that there was no coverage; as to it, we affirm.
Plaintiff was walking with her son through a store. According to the complaint filed against the owner and operator of the store, defendants negligently "allowed a free standing display to fall and strike the infant plaintiff." Defendants denied negligence and filed a third-party complaint against the mother (plaintiff here) for indemnification and contribution. They first alleged that plaintiff breached her duty to exercise reasonable care for the safety of her son. Then, defendants charged that plaintiff breached her duty to supervise her son "in that she wilfully and with wanton carelessness failed to watch over and supervise her child." The harsh allegations against plaintiff were doubtless designed to satisfy the rule of Foldi v. Jeffries, 93 N.J. 533, 461 A.2d 1145 (1983), which limits the tort liability of a parent for failure to supervise his or her child to cases in which the parent "has willfully or wantonly failed to watch over [the] child." Id. at 547, 461 A.2d 1145.
When plaintiff sought coverage and a defense, State Farm's position was that, although plaintiff was an insured for liability, so was her infant son, and the policy excluded liability claims of one insured against another insured. In other words, State Farm said there was no coverage for intra-family tort claims.
Coverage L of the policy states:
If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, we will
1. pay up to our limit of liability for the damages for which the insured is legally liable; and
2. provide a defense at our expense by counsel of our choice.
*36 Immediately following the quoted provision is a list of exclusions, which includes:
Coverage L and Coverage M[2] do not apply to:
* * * * * * * *
h. bodily injury to you or any insured within the meaning of part a. or b. of the definition of insured.
In pertinent part, the definition of "insured" includes:
"you and if residents of your household:
a. your relatives;
b. any other person under the age of 21 who is in the care of a person described above."
Homeowners' insurance policies commonly exclude bodily injury claims by resident relatives. The reason is that insurers fear collusive intra-family claims they believe put them at a serious disadvantage. It is a hard job to defend a claim when plaintiff and defendant agree that defendant was very negligent and plaintiff was terribly injured.
Recognizing this problem, we validated a policy exclusion just like the present one in Foley v. Foley, 173 N.J. Super. 256, 414 A.2d 34 (App.Div. 1980). There, a wife sued her husband for injuries resulting from his negligence and assault. The homeowners' insurer disclaimed on the basis of an exclusion for "bodily injury to any insured." The wife argued that the exclusion violated public policy because Merenoff v. Merenoff, 76 N.J. 535, 388 A.2d 951 (1978), had recently ended interspousal tort immunity for personal injuries arising from a domestic or household accident.
We disagreed. We said that there is no legal requirement that a homeowners' policy have a particular range of coverages,[3] or, *37 indeed, that a homeowner carry any insurance. On that basis, we distinguished cases which invalidated automobile liability policy exclusions of claims for injuries to an insured. Auto policies are mandated, are heavily regulated and are required by law to contain particular coverages. The exclusion of auto injuries to an insured is not permitted by law. Kish v. Motor Club of Am. Ins. Co., 108 N.J. Super. 405, 261 A.2d 662 (App.Div.), certif. denied, 55 N.J. 595, 264 A.2d 68 (1970).
In the absence of any statutory or substantial public policy requirement to cover liability for an insured's injury, a homeowners' insurance policy may exclude such liability from coverage, and courts have to enforce the exclusion. Plaintiff argues, however, that a claim for indemnification and contribution is something different, and is not what the policy excludes.
We disagree. Coverage for liability claims under the State Farm policy attaches when "a claim is made ... against an insured because of bodily injury ..." but it "does not apply to ... bodily injury to you or any insured." A demand for indemnification and contribution by a party sued by an injured insured is the equivalent of a liability claim against one insured for the injuries to the other insured. That was our holding in Knoblock v. Prudential Prop. & Cas. Ins. Co., 260 N.J. Super. 127, 615 A.2d 644 (App.Div. 1992). We said there:
In a personal injury action, indemnity claims of someone only vicariously liable and contribution claims of a joint tortfeasor are derived solely from the "bodily injury" claim of the injured person. Where that bodily injury is allegedly sustained by "any insured," the exclusion withdraws coverage. [Id. at 130, 615 A.2d 644].
We recognized in Knoblock that the purpose of excluding intra-family tort claims was to diminish the risk to the insurer of collusive claims. That risk exists even where there is no direct claim between family members. Where a claimant and one of the possibly responsible people have a common purpose to do so, they can manipulate a lawsuit to produce a distorted outcome.
Plaintiff also argues that, although the exclusion for claims by insured persons may be clear, the extension of that exclusion to third-party claims is unclear and contrary to the reasonable *38 expectations of the insured, and should therefore be ignored. The argument defeats itself. If the exclusion of a claim, by a defendant sued by an insured, for indemnification and contribution is unclear, so is coverage of all other claims for indemnification and contribution. Neither the exclusion nor the coverage is actually expressed in the policy. Nevertheless, we find coverage for indemnification and contribution in the words "a claim ... for damages because of bodily injury ..." If those words are sufficient to create coverage for third-party complaints, the exclusion of claims for "bodily injury to you or any insured" is sufficient to exclude coverage for third-party complaints where the injured person is an insured. It would not pass the red-face test to hold that essentially the same phrase is ambiguous and therefore means two opposite things in the same column on the same page.
Although the Law Division correctly ruled against coverage, it nevertheless held that State Farm had to defend plaintiff. We disagree.
The duty to defend is not a product of statute or common law, but is solely a contractual undertaking made in the insurance policy. Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22, 483 A.2d 402 (1984). Usually, as here, an insurer has the duty to defend whenever the claim against the insured alleges a basis for liability within the policy covenant to pay. Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 388-89, 267 A.2d 7 (1970). The duty to defend is broader than the duty to pay, NPS Corp. v. Insurance Co. of No. Amer., 213 N.J. Super. 547, 550-51, 517 A.2d 1211 (App.Div. 1986), but only because the duty to defend, unlike the duty to pay, is not dependent upon the ultimately determined merits of the claim. The duty to defend is not broader in the sense that it extends to claims not covered by the covenant to pay.
Our dissenting colleague would stretch the duty to defend beyond covered claims, but cannot do so without running against the grain of almost forty years of settled authority. Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 173, 607 A.2d 1255 (1992); *39 SL Inds. v. American Mot. Ins. Co., 128 N.J. 188, 197, 607 A.2d 1266 (1992); Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22, 483 A.2d 402 (1984); Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 388-89, 267 A.2d 7 (1970); Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 514, 210 A.2d 221 (1965); Lumbermen's Mut. Cas. Co. v. United Serv. Auto Ass'n, 218 N.J. Super. 492, 497, 528 A.2d 64 (App.Div. 1987); NPS Corp. v. Insurance Co. of No. Amer., 213 N.J. Super. 547, 550, 517 A.2d 1211 (App.Div. 1986); Danek v. Hommer, 28 N.J. Super. 68, 77-79, 100 A.2d 198 (App. Div. 1953), affirmed ob., 15 N.J. 573, 105 A.2d 677 (1954).
If an excluded claim is made, the insurer has no duty to undertake the expense and effort to defeat it, however frivolous it may appear to be. We are aware that the cost of defeating a frivolous claim can be a substantial one to most homeowners. However, that does not justify shifting the cost to an insurance company just because it is an insurance company.
On the other hand, the law provides a remedy for the homeowner if the insurer for a party sued for a child's injuries involves the mother in bad faith and without any reasonable basis for a belief that she "willfully or wantonly failed to watch over ... her child." The remedy is to award all reasonable litigation costs and attorney's fees incurred in defeating the frivolous claim. N.J.S.A. 2A:15-59.1. It is a particularly apt sanction if an insurer frivolously sues when it knows perfectly well that the effect will be to impose a heavy financial penalty on the family of the injured child. The remedy, however, is not to transfer the litigation burden to the homeowner's insurer, which merely asserts its settled right to exclude intra-family claims.
The judgment below is affirmed as to coverage and reversed as to defense.
PRESSLER, P.J.A.D., dissenting.
I would affirm the judgment of the trial court requiring defendant to provide plaintiff with a defense to the third-party complaint.
*40 I find it offensive that a clause in an insurance policy whose sole purported purpose is to protect the insurance company from possible collusion by the insured is used by the insurance company not as the shield for which it was intended but rather as a sword for defeating the insured's legitimate expectations. I find it particularly offensive when that sword-wielding is responsive to spurious claims against the insured by another insurance company. In the end, whether the two insurers are acting entirely independently of each other or not, it is the insured who is the victim of a combination of indefensible pleading practices and the readiness of carriers to disclaim.
Plaintiff Esta Horesh went shopping at Annie Sez, a retail store owned by Big M Inc. She had her two-year old son Joshua with her. A free-standing display fell over and struck Joshua. He was injured. Plaintiff's husband Moshe Horesh, individually and as guardian ad litem for the child, brought suit against Annie Sez and Big M Inc. claiming that they had failed in their duty of maintaining the premises in a safe condition for business invitees. The answer to the complaint denied all the allegations. Among its pro forma affirmative defenses was the allegation that plaintiff's "recovery is barred in whole or in part by his contributory negligence." It is not clear if it was the alleged negligence of the two-year old or the alleged negligence of the father who was not present or the alleged negligence of both, that was being referred to. The defendants in the personal injury suit also filed a third-party complaint against the child's mother, seeking contribution or indemnification from her on the allegation that she "willfully and with wanton carelessness failed to watch over and supervise her child," thereby breaching her duty of supervision.
As the majority cogently points out, the wilful and wanton accusation evidently had more to do with actionability under the parental immunity doctrine than it did with the facts of the case. See Foldi v. Jeffries, 93 N.J. 533, 546-47, 461 A.2d 1145 (1983) (while "the absence or inadequacy of a parent's supervision over his or her children ..." is not actionable, "a parent who has *41 willfully or wantonly failed to watch over his or her child ...." is not immune from suit). See also Horn By and Through Kirsch v. Price, 255 N.J. Super. 350, 605 A.2d 274 (App.Div. 1992) (negligent supervision by mother of a six-year old who was injured after exiting the family automobile held not actionable); Murray by Olsen v. Shimalla, 231 N.J. Super. 103, 109, 555 A.2d 24 (App.Div. 1989) (negligently giving child permission to use gasoline without supervision to fill his ATV held protected by parental immunity). Compare Mancinelli v. Crosby, 247 N.J. Super. 456, 589 A.2d 664 (App.Div. 1991) (mother's leading a child into dangerous traffic situation held potentially actionable as not involving supervision). As the Court characterized the facts in Foldi, which involved a two and a half year old wandering into a neighbor's yard where she was bitten by a dog, "[t]his case represents a typical [non-actionable] instance of a negligent lack of supervision, where a parent briefly loses sight of his or her child." 93 N.J. at 551, 461 A.2d 1145. There is nothing in this record suggesting that anything different was involved here. The claim of wilful or wanton carelessness on the mother's part was plainly spurious. Also, insofar as we can determine, plaintiff in the personal injury action never amended his complaint to assert a direct claim against the wife and mother, R. 4:8-1(b). He is now presumably foreclosed from doing so.
It seems to us that good lawyering would have dictated a prompt motion dismissing the third-party complaint. It appears to be frivolous on its face, as the majority recognizes. If so, its filing constituted a violation on R. 1:4-8, which provides that by signing a pleading, the attorney certifies "that to the best of his knowledge, information and belief there is good ground to support it" and further provides that if a pleading is signed to defeat the purpose of the rule, "it may be stricken and the action may proceed as though the pleading ... had not been served." This is a rule which I am regretfully compelled to believe is observed by the insurance defense bar in its wholesale breach. Can the affirmative defense here of contributory negligence of the two-year old or his absent father possibly have been made with *42 knowledge, information and belief that there was good ground to support it? Can the allegation of wilful or wanton carelessness be legitimately made against a mother who takes her two-year old shopping and lets go of his hand and thus, as Foldi says, "briefly loses sight of ... her child"? And if the offending pleading here was not subject to striking under R. 1:4-8, it was certainly susceptible to dismissal by summary judgment under R. 4:46.
Mrs. Horesh did not take those defensive steps calculated to obtain an early dismissal of the third-party complaint against her because she did not have a lawyer. Her homeowner's insurance carrier disclaimed. The lawyer representing her husband and child did not represent her because of the possibility of a conflict of interest. Consequently, she remained a party in the personal injury case, and commenced this action against her home owner carrier seeking a defense and indemnity. I conclude that the policy entitled her, at the least, to a defense. In short, I would not construe its exclusion of intra-family torts as operative in the circumstances here, namely, where the claim against the insured is made by a tortfeasor seeking contribution or indemnification and there is no direct claim by the co-insured family member.
I recognize the logical and semantical symmetry of the analysis both of the majority and of the opinion in Knoblock v. Prudential, 260 N.J. Super. 127, 615 A.2d 644 (App.Div. 1992), which similarly construed a homeowner's policy. But I don't agree with it. I approach the matter rather from the anti-collusion purpose of the exclusion and the legitimate expectations of an insured considered in that light.
I appreciate the insurance industry's concern with intra-family collusion in the making of personal injury claims, particularly those not involving the use of an automobile. This concern was carefully considered by Justice Handler writing for a unanimous court in Merenoff v. Merenoff, 76 N.J. 535, 388 A.2d 951 (1978), which extended the abolition of interspousal immunity beyond automobile cases and, generally, to most interspousal torts. In so doing, Justice Handler considered the interplay of the abolition of *43 the immunity and liability insurance. As he pointed out, the near universality of automobile insurance coverage in automobile cases had weighed heavily in favor of the Court's initial limited abolition of interspousal immunity in Immer v. Risko, 56 N.J. 482, 267 A.2d 481 (1970). As Merenoff explained:
Another salient factor in the Court's rejection in Immer of domestic harmony as a valid reason for the immunity doctrine was the prevalence of automobile insurance. As Justice Jacobs had mentioned in Koplik [v. C.P. Trucking Corp.]: "`* * * there is no danger of domestic tranquility being disturbed by an action for negligence by a wife against her husband who carries indemnity insurance * * *.'" 27 N.J. [1] at 15 n. 1 [141 A.2d 34 (1958)]. "[R]ealistically", the Court echoed in Immer, "[t]he presence of insurance militates against the possibility that the interspousal relationship will be disrupted since a recovery will in most cases be paid by the insurance carrier rather than by the defendant spouse. * * * Domestic harmony may be more threatened by denying a cause of action than by permitting one where there is insurance coverage." 76 N.J. at 550, 388 A.2d 951.
And ironically, as it has turned out, it was the ready availability of homeowner's insurance which played a significant role in the extension of the abolition of immunity to so-called domestic torts. Thus, as Merenoff continued:
The danger of marital disruption becomes almost academic where liability insurance is available. While this Court in Immer was strongly influenced by the prevalence of automobile insurance, we do not believe that, because general liability insurance covering household and non-automobile accidents is not as widespread as automobile insurance, this should leave claims for tortious injury arising from domestic negligence barred and unredressed. It is probable that general homeowner liability insurance is held by a substantial number of householders and is otherwise readily available. Moreover, in a given case, if there is homeowners' insurance, there is no reason impacting upon marital peace to preclude damages for personal injuries sustained by one spouse at the negligent hands of the other. The fact that some married couples may not have household insurance, should not defeat the claims of others who do have such insurance and whose marital stability is cushioned by that insurance. Id. at 551, 388 A.2d 951.
While the Court relied on the prevalence of homeowner's insurance as a factor in extending the abolition of the immunity, it well understood that the existence of insurance coverage was a two-edged sword, noting that:
The second major objection to eliminating interspousal tort immunity is the risk of fraudulent and collusive actions against insurance companies, characterized by *44 the Immer Court as "more difficult to answer" than that posited by marital disruption. [Id. at 552, 388 A.2d 951].
Its response to this concern bears repeating at length:
We entertain no doubt that our courts have at their command ample means to cope with the real or asserted spectre of fraud in the context of marital tort claims. For example, the courts could, if necessary, fashion a high standard of care to compensate for the risk of collusion between the parties.... Or this danger could be addressed by imposing a burden or proof commensurate with the dimensions of fraud perceived in the particular case of situation.... Moreover, the full glare of truth may be the best antidote for fraud. Insurance companies might in appropriate circumstances reveal their status in the case, treating the covered defendant-spouse as a hostile witness in order to attack credibility and show that the husband and wife may be scheming to gain a recovery against the insurance company.... And if allegations of fraud reach proportions where insurance coverage itself is questioned or jeopardized, a declaratory judgment action following disclaimer could be brought to air and resolve the claims.... [Id. at 554-555, 388 A.2d 951] (Citations omitted.)
....
It concluded as follows:
In consequence, based upon our confidence in the resilience and versatility of our courts to address the dangers of fraud and collusion, in either their most virulent forms or in their less noxious guises of simple pettiness or overreaching, interspousal immunity from tort actions cannot be sustained upon these grounds. [Id. at 556, 388 A.2d 951] (Citations omitted.)
Unfortunately the insurance industry did not share the Court's "confidence that our judicial system is well-equipped to sift out fraud." Id. at 553, 388 A.2d 951. At least it was not willing to take the risk. Thus, while the imperatives of automobile insurance law did not permit it to exclude intra-family automobile negligence claims from its coverage, there was no such statutory impediment to excluding intra-family domestic torts, and that is what it sought to do. And in Foley v. Foley, 173 N.J. Super. 256, 414 A.2d 34 (App.Div. 1980), we held, in the context of a direct claim by one family member against another, that the carriers were free to provide for such an exclusion. I do not now intend to revisit Foley since we are here faced with the much narrower question of whether the exclusion applies to claims over for contribution and indemnification by a non-family member tortfeasor *45 where the plaintiff family member is not making a direct affirmative claim.
I am satisfied that it should not be so construed. First, extension of the exclusion to such claims obviously does not serve the anti-collusion purpose of the direct-claim exclusion. It also obviously defeats the reasonable expectation of the policy-holder who would no doubt be astonished to learn that although he is protected from liability claims of persons other than resident family members, he is not protected from a third-party claim by a non-family member. I would hence construe the policy language in that light. That is to say, the underlying coverage is afforded "[i]f a claim is made or a suit is brought against an insured because of bodily injury...." [Emphasis added.] This suit was brought because of bodily injury. It is covered. The exclusion applies to "bodily injury to you or any [other] insured." I see no reason to apply this exclusion to a claim for contribution or indemnification made by a non-family tortfeasor charged with responsibility for a family member's injury. The interest being sought to be vindicated by that claim is not recompense for the bodily injury of the claimant but reduction of the tortfeasor's monetary exposure. Moreover, the exclusion does not say, as it easily could have, that it applies to all claims arising out of bodily injury to a family member. It refers only to the family member's bodily injury. I would therefore construe the clause consistently with its anti-collusion purpose by limiting its reach to claims for bodily injury made by one insured family member against another. Since I am satisfied that this construction is a permissible reading of the policy's not very discrete language, I would conclude that the exclusion is ambiguous as to the precise scope of the claims it intended to encompass. And if that is so, the rule requiring ambiguities in insurance policies to be construed in favor of the insured controls. See, e.g., Werner Industries, Inc. v. First State Ins. Co., 112 N.J. 30, 35-36, 548 A.2d 188 (1988).
Hence I would hold that in the absence of a direct claim by the plaintiff family member, the insured is entitled to a defense *46 against the contribution and indemnification claims. Should the matter go to trial and should the third-party defendant be found by a jury to be liable in full or in part, it seems to me that the percentage of liability assessed against the third-party family member would have to be deemed to have been waived by the non-claiming plaintiff and that the waiver would be tantamount to a covenant not to sue. Therefore the non-family tortfeasor would have to pay only its assessed percentage of total damages. Consequently, it seems to me that all we are really talking about in a situation such as this is the right to a defense  there would be in the end no damages for the carrier to indemnify against if no direct claim is made by the plaintiff.
There are also strong policy reasons supporting this conclusion. Look what happened here. Disposition of the injured child's suit has been delayed. The delay was caused in the first instance by the filing of a frivolous third-party complaint. Had defendant assumed plaintiff's defense, the underlying negligence case would have proceeded and the third-party complaint in all likelihood would have been expeditiously dismissed. Instead, plaintiff was afforded no defense and this second coverage suit ensued. She has been put to the expense of its prosecution, defendant has been put to the expense of its defense, and the judicial system has been burdened by the bringing of one unnecessary action and by the further delay in the disposition of the original action. The majority would now have plaintiff continue to foot the bill for the defense of the original action, leaving her to the dubious recourse of a third and uncertain action for counsel fees under the frivolous litigation statute, N.J.S.A. 2A:15-59.1. This expenditure of personal and judicial resources, if unnecessary, is also intolerable.
In sum, I think Mrs. Horesh bargained for a defense to the claim of the tortfeasor here. She was entitled to get it.
I would affirm.
NOTES
[1] The Law Division order for judgment contains a unique provision. It says that any party desiring to appeal may do so either within forty-five days of the entry of the order or forty-five days from the final disposition of the underlying liability case. We understand the intent of that provision, but a trial judge has no authority to extend the time to appeal. See R. 2:4-1 and -4.
[2] Coverage M is for Medical Payments.
[3] The only exceptions are that every policy must provide workers' compensation coverage for household employees, N.J.S.A. 17:36-5.29, and the fire insurance part of the policy must contain the standard provisions prescribed by N.J.S.A. 17:36-5.20.