963 A.2d 375 (2009)
405 N.J. Super. 68
Hyacinth THORPE, Administratrix Ad Prosequendum & General Administratrix Of The Estate Of Joseph Wiggan, Deceased, Plaintiff-Appellant,
v.
Jasford WIGGAN, Defendant-Respondent, and
BMW of North America, LLC, Defendant.
No. A-1995-07T2
Superior Court of New Jersey, Appellate Division.
Argued September 29, 2008.
Decided January 29, 2009.
*376 Jack Wurgaft, Springfield, argued the cause for appellant (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Mr. Wurgaft, of counsel and on the brief).
Stephen O. Mortenson, Springfield, argued the cause for respondent (Mortenson & Pomeroy, attorneys; Mr. Mortenson, of counsel and on the brief; Karen E. Heller, on the brief).
Before Judges CARCHMAN, R.B. COLEMAN and SIMONELLI.
The opinion of the court was delivered by
SIMONELLI, J.A.D.
This matter involves the tragic death of a four-year-old child, Joseph Wiggan (Joseph), who burned to death while a passenger in a car driven by his father, defendant Jasford Wiggan. Joseph's mother, plaintiff Hyacinth Thorpe, administratrix *377 ad prosequendum and general administratrix of the child's estate, sought damages against defendant for negligence in failing to remove his son from the car before the fire started.[1] Plaintiff appeals from the November 28, 2007 order granting defendant's motion in limine dismissing her complaint with prejudice pursuant to the doctrine of parental immunity. We reverse and remand for trial.
The following facts are summarized from the record. On the evening of June 17, 2004, at approximately 9:00 p.m., defendant was driving his 1993 BMW westbound on Route 78 in Springfield. Joseph was secured in a child's safety seat directly behind the driver's seat. There are differing versions of how the incident occurred. In one version, defendant allegedly stated the following to a State Police detective during a telephone conversation on October 6, 2005:
[Defendant] informed this detective that he had been traveling west on [Route 78.] He began to notice that his car was emitting smoke. He heard "2 bangs," & he smelled the smoke also, so he pulled his vehicle over to the right shoulder. He then got out & walked around the vehicle to check, but was unable to determine from where the smoke was coming. But there was smoke inside the passenger compartment, & then suddenly there was a lot of smoke & there was fire in the back. He opened the door to try to reach [his] son, but there was so much smoke. [He] couldn't get him out. [He] kept trying. It was so hot & so much smoke. Then [he does not] know what happened. Some people stopped but [he] guess[ed] nobody could help. [He] wound up in the hospital. [He] got burned.
In another version, defendant testified at his deposition on February 28, 2007 that while driving in the middle lane of Route 78 westbound, he heard two bangs from underneath the car or the trunk and smelled smoke. He then saw smoke inside the car. Believing that a tire might be the cause, he opened his window. The car then "blew up in flames." He reached into the back seat, tried to pull Joseph from the car seat but was unsuccessful. He then pulled the burning car to the shoulder, parked, ran to a bush and rolled to put out the fire on his body. By the time he returned to the car, Joseph was dead.
Defendant suffered third-degree burns over thirty-seven percent of his body. He had prolonged treatment at the Burn Unit of St. Barnabas Medical Center, including many weeks in a medically-induced coma. Investigators subsequently determined that the fire originated beneath the driver's seat, spread to the center console and then spread to the passenger and back seat areas. There is no evidence that the fire was set intentionally. The exact cause of the fire is unknown.
Plaintiff conceded that she has no claim against defendant under the deposition version, and no claim for willful and wanton conduct. Plaintiff's only claim lies under the State Police version, which she contends constitutes ordinary negligence. Defendant stipulated to that version for the purpose of the in limine motion. He argued that his decision to leave his son in the car, away from the dangers of the highway, while he inspected the vehicle was a legitimate exercise of his discretion as a parent supervising his child, thus entitling him to parental immunity. The motion judge agreed, concluding that:

*378 [U]nder the facts known to [defendant] at the time, his choice was, the decision he had to make was how to care for his child when the car was disabled on the highway at night. He had a choice and that's clearly what the issue is here that's been [narrowed] by the parties. The choice was what was he to do. Should he have removed the child immediately at that time? Or should he check out the car, the noises, and the smoke that he was aware of before removing the child? That's basically the issue here. Which choice was he to make? And it seems to me that this is similar to [DeMarco v. DeMarco, 274 N.J.Super. 257, 643 A.2d 1053 (Law Div.), aff'd, 274 N.J.Super. 210, 643 A.2d 1029 (App.Div.), certif. denied, 138 N.J. 264, 649 A.2d 1285 (1994)] in which this is the situation in which the parent must be allowed to exercise their discretion and make a choice even if it's the wrong choice.
So there being no willful or wanton conduct that would remove the actions of [defendant] from [] parental immunity here, it appears to me that this was an exercise of judgment on his part. Perhaps he would now wish that he could go back and make a different decision, but I[] think that this falls within the area of circumstances where there should be no judicial intrusion upon his decision.
On appeal, plaintiff contends that defendant's decision to leave Joseph in the car had nothing to do with providing for the child's emotional and physical needs or fostering the child's care and well-being. Rather, defendant negligently supervised Joseph by failing to remove him from the car prior to the time the fire started.
"[T]he doctrine of parental immunity... preclude[s] liability in cases of negligent supervision, but not for a parent's willful or wanton failure to supervise his or her children." Foldi v. Jeffries, 93 N.J. 533, 549, 461 A.2d 1145 (1983). "There are certain areas of activities within the family sphere involving parental discipline, care, and control that should and must remain free from judicial intrusion. Parents should be free to determine how the physical, moral, emotional, and intellectual growth of their children can best be promoted." Id. at 545, 461 A.2d 1145. For this reason, the doctrine only applies, "in special situations that involved the exercise of parental authority and customary child care." Id. at 551, 461 A.2d 1145. Thus, where willful and wanton conduct is not at issue, the immunity will only apply if a defendant's conduct "implicates customary child-care issues or a legitimate exercise of parental authority or supervision." Buono v. Scalia, 179 N.J. 131, 138, 843 A.2d 1120 (2004) (citing Foldi, supra, 93 N.J. at 549, 461 A.2d 1145). "[A]ny conduct that does not reflect a legitimate child-rearing decision is excluded from the immunity doctrine altogether, preserving in all respects a traditional negligence claim." Id. at 145, 843 A.2d 1120. "Ultimately, whether conduct implicates parental decision-making ... will depend on the totality of circumstances in a given case, subject to a fact-sensitive analysis by the trial judge and, when warranted, by a jury." Id. at 138, 843 A.2d 1120.
There being no claim here of willful or wanton conduct, the only question is whether, under the totality of circumstances, defendant's decision to leave Joseph in the car implicates customary childcare issues or a legitimate exercise of parental authority or supervision. A legitimate child-rearing decision existed where a parent decided to let his young child ride a bicycle within the confines of a neighborhood block party in the parent's presence. Id. at 134, 843 A.2d 1120. Our Supreme Court held that such a decision "falls within *379 the purview of parental philosophy involving a child's upbringing, entitling [the parent] to immunity as a matter of law[,]" and "`falls within the realm of activities which partake of the everyday exigencies of regular household existence [] that [should be] exempted from simple negligence liability[.]'" Id. at 141-42, 843 A.2d 1120 (quoting Foldi, supra, 93 N.J. at 550, 461 A.2d 1145). However, the Court cautioned that "[c]rossing a street, driving a car, and a multitude of similar activities simply do not implicate legitimate child-rearing issues and, therefore, fall outside the purview of the immunity doctrine." Id. at 141, 843 A.2d 1120.
Likewise, we have found a legitimate child-rearing decision in a number of cases. See Horn v. Price, 255 N.J.Super. 350, 354, 605 A.2d 274 (App.Div.1992) (a mother's decision whether it was appropriate for her child to leave the mother's vehicle "clearly involved parental supervision as [the mother] was in the best position to know the limitations and capabilities of her own child") (citing Foldi, supra, 93 N.J. at 546, 461 A.2d 1145); DeMarco, supra, 274 N.J.Super. at 263, 643 A.2d 1053 (a mother's decision to continue driving her daughter to a crisis center for treatment instead of stopping the car when the daughter threatened to jump from it was a decision "made in [the mother's] capacity as a parent as to how best to care for her child's emotional needs at the time[,]" and involved "an essential element of providing customary child care[,] which should be free from judicial intrusion."); Verni v. Harry M. Stevens, Inc., 387 N.J.Super. 160, 214, 903 A.2d 475 (App.Div.2006), certif. denied, 189 N.J. 429, 915 A.2d 1052 (2007) (a parent's decision to remove a child from a car seat because the child was ill and soiled her clothing constituted "the type of ordinary child care decision a parent must make every day.")
Conversely, in France v. A.P.A. Transport Corp., 56 N.J. 500, 507, 267 A.2d 490 (1970), our Supreme Court did not find a legitimate child-rearing decision where two children were injured in an automobile accident while passengers in their father's car. Id. at 502, 267 A.2d 490. The Court recognized that "there may be areas involving the exercise of parental authority and care over a child which should not be justiciable in a court of law." Id. at 507, 267 A.2d 490. However, the Court concluded that parental immunity does not shield a parent for injuries a child suffers "as a result of the negligent operation of a motor vehicle." Ibid.
We found no legitimate child-rearing decision in Mancinelli v. Crosby, 247 N.J.Super. 456, 589 A.2d 664 (App.Div.1991). There, a seven-year-old child, accompanied by her mother, was permitted to cross a busy street in the middle of the block away from the crosswalk. Id. at 458, 589 A.2d 664. The child sustained injuries when struck by a car. Ibid. Applying the Foldi analysis, we concluded that the mother's negligence was not protected by parental immunity, holding that:
This was not a matter of customary child care, discipline or supervision. This was simple, garden-variety negligence by the parent which exposed both the parent and the child to injury. Although [the mother] may have literally exercised parental authority in transporting her child across the street, this is not the sort of exercise of parental authority in child-rearing intended for protection by the parental immunity doctrine.
....
This case simply involves a mother's negligence in attempting to cross a street with a child at a dangerous location without making proper observation. Denial of parental immunity in this action *380 does not constitute judicial intrusion into a parent's philosophy of child rearing[,] but only simple recognition of the parent's breach of a duty of due care which we all generally owe to both ourselves and others in the community.
[Id. at 461, 589 A.2d 664.]
In Murray by Olsen v. Shimalla, 231 N.J.Super. 103, 555 A.2d 24 (App.Div. 1989), a ten-year-old boy sued his father for injuries incurred by the igniting of gasoline obtained from the father's unlocked storage shed. Id. at 105, 555 A.2d 24. Based on the evidence, we concluded that parental immunity applied if the jury found that the father negligently exposed his son to the risk of injury from the misuse of gasoline, by permitting the child access to and use of the gasoline for his ATV without parental supervision. Id. at 108-09, 555 A.2d 24. Conversely, we concluded that parental immunity did not apply if the jury found that the father negligently exposed children, including his son, to the risk of injury when he stored gasoline in an unlocked shed. Id. at 109-10, 555 A.2d 24.
Applying the Foldi analysis, we conclude that defendant's conduct is not protected by parental immunity. Under the version of the facts stipulated for the purpose of the in limine motion, defendant left his four-year-old child in a smoke-filled car, strapped in a car seat with no way of escape, exposing him to injury. This was not a matter of customary child care, discipline or supervision. It had no connection whatsoever to any unique philosophy of child-rearing, nor was it designed to promote Joseph's physical, moral, emotional, and intellectual growth. This case simply involves a father exposing his son to the risk of injury by not removing him from the car before the fire erupted. Whether or not defendant's conduct constitutes negligence is for a jury to decide.
Reversed and remanded for trial.
NOTES
[1] Plaintiff abandoned her claims against defendant for negligent maintenance and/or operation of the car and for negligence in causing the fire. She also voluntarily dismissed with prejudice her claims against defendant BMW of North America, LLC.